No. 20,739.

PETER K. ROOSEVELT, ET. AL., *v.* BEAU MONDE CO., ET. AL.

(384 P. [2d] 96)

Decided July 22, 1963.

Mr. FRED WINNER, Mr. GEORGE LOUIS CREAMER, MR. HAROLD FEDER, for plaintiffs in error.

Messrs. DAWSON, NAGEL, SHERMAN and HOWARD, Mr. RAYMOND J. TURNER, Mr. JAMES E. HAUTZINGER, for defendant in error Beau Monde Co.

Mr. JOSEPH W. ESCH, Messrs. MYRICK, SMITH, CRISWELL and BRANNEY, for defendants in error Wallace and City of Englewood.

Mr. J. F. LITTLE, MR. DAVID C. LITTLE, for defendants in error Sigafoos, Hill, Wilson and Bull.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

ON January 25, 1963, Beau Monde Co., a Colorado corporation, to whom we refer as Beau Monde, filed its complaint under Rule 106, R.C.P. Colo., in the District Court of Arapahoe County, Colorado. Named as defend-

ants in the complaint are the City of Englewood and Beryl A. Wallace, its building inspector. We refer to the defendants as such or as Englewood and Wallace.

On February 15, 1963, Beau Monde filed its FIRST AMENDED COMPLAINT in which "Article 10" appearing in the original complaint was changed to read "Article 11," and three additional alleged claims for relief are set forth.

In substance, Beau Monde alleges that it is the owner of some fifty-five acres of lands, herein referred to as the *subject property,* located in Arapahoe County, now within the City of Englewood, lands which it claims are not subject to any use restrictions; that W. R. Grimshaw Company, Inc., with whom Beau Monde had entered into a contract for the construction of a shopping center on the subject property, applied to the City of Englewood for a permit to build a regional shopping center on the land. Englewood, through Wallace, denied the application for the alleged reason that the property was zoned R-1-A and use thereof restricted to residential purposes. Promptly following denial of the application, Beau Monde commenced this action, seeking a court order directing issuance of the permit.

On February 21, 1963, the defendants filed their answer to Beau Monde's complaint and amended complaint.

In substance, as defenses to Beau Monde's claims, defendants allege that:

1. The subject property is zoned R-1-A Residential:

2. Beau Monde's complaint does not allege a claim against Englewood entitling it "* * * to relief of any nature and, more particularly, to relief in the nature of the discretionary writ of mandamus."

3. that: "* * * this court lacks jurisdiction of the subject matter of each of plaintiff's claims by reason of plaintiff's failure to join an indispensable party, or parties";

4. That Beau Monde by reason of actions and conduct of its predecessor in title of the subject property has waived and abandoned its right to contest the validity

of Article 1, Section 7, Ordinance No. 45, Series of 1955 (zoning ordinance), and is now precluded from attacking the same, due to the expiration of the time allotted for such purpose;

5. Beau Monde failed to seek review before the Board of Adjustment and Appeals of the motion of Wallace in denying the building permit and, having failed to exhaust its administrative remedies, cannot obtain relief in the courts in the nature of mandamus, or at all;

6. Beau Monde is estopped to question the validity of Englewood Ordinance No. 45, zoning the subject property R-1-A;

7. Ordinance No. 45 zoning the subject property R-1-A is valid as to said property, and Beau Monde is without authority to question its validity with reference to other property.

On March 8, 1963 (within twenty days after filing of the First Amended Complaint of Beau Monde), Roosevelt and ten other named persons, to whom we will refer as intervenors, filed their motion seeking permission to intervene in the action. Of those seeking to intervene, six are alleged to be the owners and occupants of residence properties in Englewood, and five are alleged to be the owners and occupants of residence properties in the Town of Cherry Hills Village, Arapahoe County; all of said properties are alleged to be "immediately abutting the subject property" and being within the legal protest zone against zoning of the subject property.

In their motion, intervenors allege that the subject property is now zoned residential-agricultural under applicable Arapahoe County and Englewood zoning; that Englewood and many members of its council, though voting against proposals to rezone the subject property for commercial purposes, actually desire the property to be rezoned as commercial, and some council members have actively attempted to cause such rezoning and are opposed to Englewood interposing even a nominal defense to Beau Monde's claims; that Beau Monde and its

predecessor in title and one Gerri von Frellick, have for three years repeatedly sought rezoning of the subject property, resulting in the continual harrassment of the intervenors and flouting of all zoning regularity and canons of proper land use, and in disregard of the public interest by reason of which,

"* * * it is imperative that this intervention be allowed in order that the interests of adjacent private landowners and of the broad public affected be protected."

Tendered with the motion is intervenors' "ANSWER, COUNTERCLAIMS, AND CROSS-CLAIMS," wherein they allege: (1) that the complaint fails to state a claim; (2) that the subject property is not owned by Beau Monde, but is now owned by Time-Life Broadcasting, Inc.; (3) that the subject property is in the midst of a highly developed residential area; (4) that the subject property has, prior to construction of most of the area homes, been zoned restrictively for residential purposes and is now so zoned, and it has never been permitted either commercial or industrial use; (5) that past and present performances of Englewood and several members of its council indicate a desire to have the subject property utilized for shopping center purposes, and they have and are now cooperating with Beau Monde to accomplish this purpose.

Most of the alleged defenses contained in the tendered answer of intervenors are the same as those set up by the defendants. Additional matters set up by intervenors include allegations (1) that Beau Monde is not the real party in interest; (2) that Grimshaw (the contractor who applied for and was denied a permit) is a foreign corporation, not qualified to do business in Colorado and not licensed by Englewood as a contractor; (3) res judicata. By counterclaim and cross-claim they seek a declaratory judgment declaring the rights of the parties.

On March 15, 1963, Beau Monde filed its "TRAVERSE AND ANSWER IN OPPOSITION TO MOTION TO INTERVENE FILED BY PETER K. ROOSEVELT, ET.

AL.," wherein it demands intervenors be compelled to prove averments contained in their motion. Said traverse further states that the only issue involved in the action is the question as to whether the subject property is zoned or unzoned, that that question has not previously been litigated or adjudicated; denies that the council or members thereof have assisted in getting property zoned as commercial; *admits that intervenors will be bound by any judgment entered;* alleges that the application to intervene is not timely and that the counterclaim injects new matter, and that the intervenors' rights are properly and adequately represented by counsel for Englewood, and states *that if permissive intervention be granted it should be on condition that no counterclaim be considered, and that dates previously fixed for pre-trial conference and trial be maintained.*

On March 19, 1963, defendants filed their "VERIFIED TRAVERSE TO MOTION TO INTERVENE." Therein defendants deny nearly all of the allegations contained in intervenors' motion, and state that the interests of Englewood and intervenors are the same and that counsel for Englewood have been authorized to defend this action and are doing so, and are using and intend to use all honorable means to obtain a judgment adverse to Beau Monde, and that no member of the council has sought to persuade defendants' counsel to not fully defend, and that counsel can and will adequately protect the interests of intervenors, which interests are the same as those of Englewood and Wallace.

Intervenors rely upon Rule 24, R. C. P. Colo., pertinent portions of which provide:

"(a) * * * Upon timely application *anyone shall* be permitted to intervene in an action: * * * (2) when the representation of the applicant's interest by existing parties *is or may be inadequate* and the applicant is *or may be* bound by a judgment in the action; * * *.

"(b) * * * Upon timely application anyone may be permitted to intervene in an action * * * (2) when an

applicant's claim or defense and the main action have a question of law or fact in common. * * *." (Emphasis supplied.)

After hearing extensive arguments, the trial court in these few words disposed of the motion of intervenors:

"THE COURT: The court finds that under the present state of the record the applicants to intervene are not entitled to do so. The motions to intervene are denied, with leave, however, to renew those motions in the event that the City of Englewood, through its counsel, should in some way abandon this suit; or, in the event of a ruling adverse to the City, it should fail or refuse to appeal from the decision of this Court.

"The Court finds that this litigation is in progress and is being defended by the City through its attorneys, and there is no evidence of fraud, collusion, or bad faith."

Motion for new trial was dispensed with and intervenors are here by writ of error seeking reversal, contending that Rule 24 (a), R. C. P. Colo., grants to them the absolute right to intervene, that denial of that right was reversible error, and that refusal of the trial court to permit intervention under 24 (b) R. C. P. was an abuse of discretion and erroneous.

From the record before us it appears that neither Beau Monde nor defendants were basically opposed to intervention. Their opposition stemmed from intervenors' accusations and innuendoes leveled against Beau Monde, its predecessor in title, von Frellick (neither of whom are parties to the action), Englewood, its officers, including its attorney; accusations which placed the parties, their officers and attorneys and the trial court in the very unfortunate and awkward position of having to deny the accusations and resist the motion to intervene, or consent to intervention which, under the circumstances in which they were placed, would have been tantamount to admitting the accusations.

We conclude that the judgment of the trial court denying intervenors' motion was erroneous.

There can be no doubt that the rights of those seeking intervention will be bound by any judgment in the case. Intervenors so contend, Beau Monde expressly so states in its traverse, and Englewood, in alleging that its interests and the interests of intervenors, if any they have, are the same, admits that intervenors will be bound by any judgment.

The six intervenors who reside in and own property in Cherry Hills Village are not parties by representation to this litigation, and so are not represented by counsel employed by, and appearing for, Englewood. It is not the duty or privilege of Englewood's attorney to represent the owners of property located without the city limits. Englewood is without authority to employ counsel to represent such persons and any effort to do so would be outside of and beyond the scope of its powers.

■ Thus we conclude that these residents of Cherry Hills Village are without any representation. They own property immediately adjacent to and abutting on the subject property. Building of the proposed shopping center confers similar if not identical benefits, or imposes similar if not identical detriments on the owners of abutting property in Englewood or Cherry Hills Village. Clearly those residing in Cherry Hills Village are entitled to intervention and representation by counsel of their choosing.

■ Presumably all zoning of properties confers benefits and imposes burdens. Here, intervenors own properties subject to limitations placed on its use by the zoning regulations, yet endowed with the protections afforded by the zoning of adjacent properties or properties within the zoned area, upon the stability of which property owners should be entitled to rely.

In *Holly, Inc. v. Commissioners*, 140 Colo. 95, 342 P. (2d) 1032, it was said:

"The defendant, by amending the Arapahoe County Zoning Resolution, as it did, failed to take into consideration the need for reasonable stability in zoning regu-

lations and the requirement of certainty of description, as well as proper notice of the proposed change. In so doing, it abused its discretion, acted arbitrarily and capriciously, and exceeded its jurisdiction."

In *Clark v. Boulder,* 146 Colo. 526, 362 P. (2d) 160, the court observed:

"Property owners have the right to rely on existing zoning regulations when there has been no material change in the character of the neighborhood which may require rezoning in the public interest. See *Holly, Inc. v. Commissioners, supra,* and *Borough of Cresskill v. Borough of Dumont, supra.* In addition, the development and growth of a comprehensively zoned area in accordance with the uses permitted under the plan, does not permit emasculation of such plan under the guise of 'changed conditions' as defendants here contend. Also several previous attempts have been made here to secure commercial re-zoning without success. On this record no changes recognized in law as sufficient to override the prior refusals have been presented. * * *."

Counsel for Beau Monde, in contending that intervention was not proper, rely heavily upon *Denver Chap. of Colo. Motel Ass'n v. City and County of Denver,* 150 Colo. 524, 374 P. (2d) 494. Apparently the trial court also relied upon language contained in the foregoing case and considered it as controlling. Here the trial court expressed no reason for denying intervention, unless it be found in these words:

"The Court finds * * * there is no evidence of fraud, collusion, or bad faith."

In the *Motel Ass'n case,* the court used the following language (taken from 4 Moore's Federal Practice, 2d ed. at § 24.08):

" 'Even though the applicant might be bound by the judgment, *he cannot intervene as of right if he is in fact adequately represented by the existing parties* to the action. * * * Inadequacy of representation is shown if there is proof of collusion between the representative

and an opposing party, if the representative has or represents some interest adverse to that of the petitioner, or fails because of nonfeasance in his duty of representation.

\* \* \*

" 'Taxpayers and ratepayers have not fared very well in their efforts to secure an absolute right of intervention. *Representation by the governmental authorities is considered adequate in the absence of gross negligence* or bad faith on their part \* \* \*.' (Emphasis supplied.)"

We conclude that counsel and the court have drawn unwarranted conclusions from the above language. In stating that certain facts shall be considered as showing inadequacy of representation, it does not follow that inadequacy of representation may not be shown by other facts—such as here, where certain persons who will be affected by the outcome of the litigation are not represented at all, or where the interests of Englewood as a city and those of intervenors are or may be adverse. Possibly, and probably, Englewood would benefit by the construction of the shopping center, and yet certain individual residents and property owners be adversely affected by such construction.

█ In *Motel Assn. v. Denver,* supra, we have parties seeking to intervene as taxpayers. As taxpayers, they occupied a very different position than that of intervenors here, who do not seek intervention as taxpayers, but as property owners who will be directly affected by the outcome of the litigation. The interests of all taxpayers are the same, hence the rule denying intervention. The interests of property owners in zoning matters are often very divergent and differ one from the other, and may well sanction individual representation by different counsel.

The Rules of Civil Procedure provide that they are to be liberally construed "to secure the just, speedy, and inexpensive determination of every action."

Rule 24 is a duplicate of the same numbered Federal rule, which rule has been construed in many Federal cases.

In *Wolpe v. Poretsky*, 144 F. (2d) 505, we find a situation comparable to that here presented. There a property owner sought to enjoin the Zoning Commission from carrying into effect a zoning order. At the close of the trial the court found the zoning order void and enjoined its enforcement. The Zoning Commission, on April 8, decided not to appeal, whereupon, on May 6, Poretsky and numerous other adjoining property owners sought to intervene, alleging that they would be seriously injured by the erection of an apartment house on the rezoned land. The trial court denied the application to intervene. In reversing, the appellate court said:

"The question presented by the record may be stated as follows: Under what circumstances may adjoining property owners intervene in a suit to enjoin the enforcement of a zoning order which affects the value or use of their property? In considering that question we must first determine what rights are given to adjoining property owners by a zoning order.

\* \* \*

"In their motion to intervene appellants relied solely on Rule 24(b) of the Federal Rules of Civil Procedure, which relates to permissive intervention. However, had the intervention been permissive we think it would have been an abuse of discretion to deny it under the circumstances of this case. Adjoining property owners in a suit to vacate a zoning order have such a vital interest in the result of that suit that they should be granted permission to intervene as a matter of course unless ·compelling reasons against such intervention are shown."

In *Herzog v. City of Pocatello*, 82 Idaho 505, 356 P. (2d) 54, a factual situation very similar to that before us is presented. There, as here, the trial court denied owners of property adjacent to other property, the

zoning of which was under attack, the right to intervene. In reversing, the Supreme Court said:

"The trial court held that appellants did not have sufficient interest in the issues framed to justify their intervention; * * * that to permit appellants to intervene would add nothing to the protection of their claimed rights for the reason that the defendant city is obligated to, and by its answer has, invoked all of the defenses to which any and all of its residents are entitled; that to permit such intervention would unnecessarily and unreasonably delay the trial of the issues between the original parties to the cause.

"The only question presented is whether the trial court erred in denying appellants the right to intervene in this action.

\* \* \*

"* * * appellants allege that their property, which is either adjoining or adjacent to the property in controversy, will be damaged if respondents succeed in the main action; that by reason of the proximity of appellants' property to the property in controversy appellants' interest in the result of the main action is substantially different from the interest of the defendant city as a whole.

\* \* \*

"We are of the view that appellants' defense and the main action have a question of law in common and that appellants have sufficient interest in the matter in litigation to entitle them to intervene."

In *Texile Workers Union of America v. Allendale Co.*, 226 F. (2d) 765, dealing with Federal Rule 24, the court said:

"Generally 'a claim of an absolute right to intervene must be based upon the language of Rule 24(a).' But this rule is not 'a comprehensive inventory of the allowable instances for intervention' as of right. *Missouri-Kansas Pipe Line Co. v. United States*, 1941, 312 U.S. 502, 505, 61 S.Ct. 666, 85 L.Ed. 975. In that case, in

reversing an order denying intervention, the Supreme Court was not concerned with the distinctions between 24(a) and (b). In fact, the Court spoke in terms of permissive intervention:

'We are not here dealing with a conventional form of intervention, whereby an appeal is made to the court's good sense to allow persons having a common interest with the formal parties to enforce the common interest with their individual emphasis. Plainly enough, the circumstances under which interested outsiders should be allowed to become participants in a litigation is, barring very special circumstances, a matter for the *nisi prius* court. But where the enforcement of a public law also demands distinct safeguarding of private interests by giving them a formal status in the decree, the power to enforce rights thus sanctioned is not left to the public authorities nor put in the keeping of the district court's discretion.' "

In *Kozak v. Wells,* 278 F. (2d) 104, it is said:

"We are influenced, also, by the realization that the allowance of intervention here will be in line with the command of Rule 1, F.R.C.P., that the rules 'be construed to secure the just, speedy, and inexpensive determination of every action.' * * *.

\* \* \*

"In summary, therefore, we conclude that the appellants are entitled to intervene of right. Like Ford, supra, [249 F. 2d 27] we regard this case as one where 'the practical necessities grant the applicant an absolute right to intervene.' * * *."

In *Ford Motor Company v. Bisanz Bros., Inc.,* 249 F. (2d) 22, it is said:

"We are satisfied, however, that the controlling question in this case is not whether it was an abuse of discretion to deny leave to intervene but whether the Ford Motor Company was entitled to intervene as of right under Rule 24 (a) (2).

"There are three interests involved in this contro-

versy: (1) that of the residential-property owners, claiming the right to have the Railroad enjoined from maintaining and operating the trackage in suit; (2) that of the Railroad, claiming the right of a common carrier to continue to maintain and operate the trackage; and (3) the interest of the Ford Motor Company as a shipper, claiming the right to have the Railroad furnish the freight service essential for the operation of the assembly plant and to maintain and operate the necessary trackage to furnish it. The plaintiffs represent the first of these interests; the Railroad represents the second; and the Ford Motor Company seeks intervention to represent the third.

\* \* \*

"This, we think, is a situation where 'the practical necessities grant the applicant an absolute right to intervene.' Brotherhood of Railroad Trainmen v. Baltimore & Ohio Railroad Co., supra, at page 524 of 331 U.S., at page 1390 of 67 S.Ct. See and compare, Clark v. Sandusky, 7 Cir., 205 F. 2d 915, 919."

[5] Defendants and Beau Monde urge that intervention should be denied because intervenors by their tendered cross-claim and counterclaim seek to interject new issues into the case as laid and to change the nature of the litigation. If intervenors have a right to intervene for the purpose of litigating the issues as made by the parties, the fact that they seek to improperly interject new issues is no reason for denying intervention to try issues properly presented. The trial court can well grant intervention and resolve matters properly before the court and strike or refuse to hear matters presented by intervenors' counterclaim and cross-claim.

We conclude that under the facts as presented here, intervention should have been allowed.

The judgment is reversed and the cause remanded to the trial court with directions to grant the motion of Roosevelt, et al., to intervene, and to dispose of matters

properly before the court consistent with the views herein expressed.

MR. JUSTICE PRINGLE does not participate.