No. 23956.

PETER K. ROOSEVELT, DOUW FONDA AND SUSAN ANN FONDA, SHARON R. RANSDELL AND LUCILLE E. RANSDELL, CHARLES A. PRIEN AND FERN L. PRIEN, CHARLES R. TAYLOR, III AND MARSHA J. TAYLOR, VAN K. ANDERSON AND FLORENCE L. ANDERSON, AND WELLSHIRE DEVELOPMENT, INC., A COLORADO CORPORATION, INDIVIDUALLY AND AS CITIZENS, TAXPAYERS AND PROPERTY OWNERS IN THE CITY OF ENGLEWOOD, THE CITY OF CHERRY HILLS VILLAGE, THE COUNTY OF ARAPAHOE, AND FOR AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED v. THE CITY OF ENGLEWOOD, A MUNICIPAL CORPORATION, BERYL WALLACE, AS BUILDING INSPECTOR OF THE CITY OF ENGLEWOOD, GEORGE H. ALLEN, MAYOR, DONALD G. FULLERTON, MAYOR PRO TEM, WILLIAM B. HANSON, J. C. KREILING, TYMER RICE, RAY LUDWIG AND J. LOUIS PARKINSON, AS MEMBERS OF THE CITY COUNCIL OF THE CITY OF ENGLEWOOD AND COLLECTIVELY BEING THE CITY COUNCIL OF THE CITY OF ENGLEWOOD, TIME-LIFE BROADCAST, INC., A COLORADO CORPORATION, AND J. J. CAREY.

(492 P.2d 65)

Decided December 27, 1971.

NEEF, SWANSON AND MYER, EDWARD C. EPPICH, WINNER, BERGE, MARTIN and CLARK, WARREN O. MARTIN, for plaintiffs in error.

Gorsuch, Kirgis, Campbell, Walker & Grover, Leonard M. Campbell, Myrick, Criswell & Branny, John A. Crisswell, for defendants in error.

*En Banc.*

Mr. Justice Kelley delivered the opinion of the Court.

This is a zoning case involving a 57-acre tract of land located in the southeast part of the City of Englewood, known as the KLZ site, less a small portion of the tract located on the north side which was omitted from the challenged zoning ordinance in order to form a single-family buffer strip. The plaintiffs in error, hereinafter referred to as Roosevelt, instituted these proceedings individually and as citizens, taxpayers and property owners in the City of Englewood and the City of Cherry Hills Village and Arapahoe County against the City of Englewood, its mayor and council, the city building inspector, Time-Life Broadcast, Inc., J. J. Carey, and Security Life and Accident Company. Time-Life and Carey were former owners; Security Life is the present owner of the entire tract in litigation and the only real party in interest, so far as ownership is concerned.

The trial court upheld the validity of the zoning ordinance which rezoned the KLZ site from single-family residential to multi-family residential. For the reasons hereinafter set forth, we affirm the judgment of the trial court.

Roosevelt challenged the validity of the ordinance primarily on two grounds, phrased as follows:

"(a) The high density zoning is arbitrary and capricious;

"(b) The zoning ordinance failed [to pass] because the required three-fourths of City Council did not vote for it.

I.

This property has been involved in litigation since 1961. The plaintiffs are property owners who live in the vicinity of the subject property, both in Englewood and

580

in Cherry Hills Village, and claim to be adversely affected by the rezoning. The trial court made extensive findings of fact which we have rearranged chronologically to permit a historical perspective.

The KLZ site was first zoned in 1940 by Arapahoe County as residential-agricultural which permitted single-family dwellings and accessory uses. In 1955 the City of Englewood, then a second-class city, enacted a comprehensive zoning ordinance (Ordinance 45, Series of 1955). Article III, § 3(4) of the ordinance provided that whenever 20% of the adjacent property owners protested a proposed zoning change, a three-fourths majority vote was required to enact such change. This ordinance was identical to C.R.S. '53, 139-60-5 (since re-enacted as C.R.S. 1963, 139-60-5).

In 1958 Englewood became a home rule city. Existing ordinances remained in effect until repealed by authority of the new charter. In 1962 the KLZ site was annexed to the City of Englewood. The newly annexed land was zoned R-1-A (single-family). In November of 1962, the council attempted to rezone the property for use as a regional shopping center. The vote on the rezoning ordinance was 5-2. There had been a legal protest of 20% of adjacent property owners. Because of the protest the mayor declared that the adoption of the ordinance failed for lack of the required three-fourths majority vote under Ordinance 45 or C.R.S. '53, 139-60-5.

In August of 1963, the council, after notice and hearing amended the minutes of the November meeting to show that the zoning amendment had been passed by a 5-2 vote at that meeting. In September of 1963, Ordinance 23, Series of 1963, purporting to rezone the property for a shopping center, was passed by a 4-3 vote. Thus, there were two ordinances enacted by the council, each of which purported to zone the subject property for commercial use. Some of the present plaintiffs, residents of Englewood and Cherry Hills, brought suit in the District Court of Arapahoe County, alleging that by

virtue of their protests, the three-fourths vote requirement was in effect and that consequently, both attempted amendments were invalid. The trial court in *Roosevelt v. Englewood*, Arapahoe County District Court, Civil Action No. 19406 (hereinafter called *Roosevelt No. 1*), sustained the plaintiffs' contention including approval of the mayor's ruling that the three-fourths majority vote requirement applied to the 1962 zoning ordinance amending the 1955 ordinance.

In September, 1963, Englewood, which by this time had become a home rule city, adopted Ordinance 26, Series of 1963, a new comprehensive zoning ordinance. In addition to revamping the zoning scheme it specifically eliminated the three-fourths majority requirement, providing, instead, that any change or amendment would only require the affirmative vote of a majority of the membership of the entire council.

In November, 1967, the ordinance in issue here, Ordinance 28, Series of 1967, after full compliance with all procedural requirements, was passed by a 4-3 vote. This met the vote requirement of the 1963 ordinance, there being no protest provision increasing the vote require ment to more than "a majority of the entire council."

Ordinance 28, rezoned the KLZ site from single-family residential to multi-family residential. In upholding the validity of the ordinance the trial court made extensive findings of fact relating to changes of a material nature in the character of the neighborhood which have occurred since the annexation ordinance of 1962 which zoned the site R-1-A, single family.

▮ We agree with Roosevelt's basic premise that the plaintiffs have a right to rely on existing zoning regulations when there has been no material change in the character of the neighborhood which may require rezoning in the public interest. *Clark v. Boulder*, 146 Colo. 526, 362 P.2d 160; *Holly Development, Inc. v. Board of County Commissioners*, 140 Colo. 95, 342 P.2d 1032. And if there was, in fact, no evidence to support and justify

the zoning amendment, the council could be said to have acted arbitrarily and capriciously.

Some of the Planning Commission's findings, adopted by the court as its own, which were considered material to and warranted the council in amending the zoning map, were: (a) the increase in the population in the area, including the building of multi-family dwellings on the easterly border of the subject site; (b) the effect of the arterial, major six-lane highway along the south boundary and "its almost freeway status with an increasing vehicular count to 1965 of 19,000 and a present estimate that there would be 35,000 in the relatively near future" (1967); (c) the "need for multi-family use as only 4.2% of the city is so zoned, and much of that land is in the core area presently held in small ownerships which prevents it from being acquired for a large development that would lend itself to a well-planned, multi-family development with the amenities that can be found in a planned unit development"; (d) that it is not practical under present conditions to expect the 54-acre site to be developed for single-family uses and that a multi-family zoning would be a proper development that would not be greatly detrimental nor have an adverse effect in the area "and particularly for the property in Cherry Hills to the south which is separated by the major arterial highway."

 Roosevelt asserts that the changes found by the trial court are the same conditions which existed at the time of the adjudication by the district court in *Roosevelt No. 1,* thus working a collateral estoppel on Englewood. It should be noted that the time period by which neighborhood changes are measured is that between the previous valid ordinance and the one effecting the change.

 Assuming, for the purpose of answering the argument, that there have been no physical changes whatsoever in the area since the decision in *Roosevelt No. 1,* we think that Roosevelt's contention has no merit. The

issue in that case related to an amendment which would have radically changed the character of the use of the re-zoned property from residential to commercial and would have materially affected the adjacent property. The current amendment is one of degree — from single-family residences to multi-family residences, rather than a change in kind — from single-family residences to a regional shopping center. Also, the Planning Commission specifically found that multi-family zoning would not be detrimental nor have an adverse effect on the area.

The fact that neighborhood changes are found not to justify a particular zone classification amendment at one time does not preclude the use of the same changes as a basis for a more restrictive zone classification amendment in a subsequent ordinance.

Although for purposes of argument we assumed that no changes had occurred between the decision in *Roosevelt No. 1* and the passage of the ordinance here challenged, the fact of the matter is that the Planning Commission and the court both found that material changes had occurred during this period.

Upon the record before us in this case, we conclude that the council did not act in an arbitrary and capricious manner in rezoning the KLZ site.

## II.

Roosevelt contends that the three-fourths majority requirement of C.R.S. 1963, 139-60-5 is applicable to Englewood, in spite of the fact that (1) Englewood is a home rule city and (2) by Ordinance 26, Series of 1963, the present comprehensive zoning ordinance, repealed the three-fourths majority vote requirement. Roosevelt contends that the zoning ordinance did not purport to supersede the state statute on zoning, so consequently, the state statute controls.

Section 22.1-2 of Ordinance 26 seems to furnish a complete answer to this contention. It states:

"Purpose. The City of Englewood recognizes that zoning is ultimately a local and municipal matter, and *with the*

584

*intention of superseding, within the territorial limits and other jurisdiction of the city, any general law of the state of colorado,* has enacted this ordinance to encourage the most appropriate use of land throughout the city and ... for said purposes to divide the city into Zone Districts of such number, shape, location and area as may be deemed best suited to carry out these regulations and provide for their administration, enforcement, *amendment* and judicial review." (Emphasis added.)

The ordinance, in § 22.3, provides in elaborate detail the procedures for "amendments," concluding with a provision that to adopt the recommendations of the Planning Commission,

"... any such amendment and/or map change shall require the affirmative vote of the majority of the membership of the entire council for final passage."

Likewise, when the Commission disapproves a proposed change in the ordinance, the Council, on review for a dissatisfied applicant, "may, after public hearing, make such change in said ordinance, by the affirmative vote of the majority of the membership of the entire Council."

 Roosevelt contends that because the trial judge enforced the three-fourths vote requirement of the statute in *Roosevelt No. 1,* that it is applicable here. His argument stated in this language:

"The decision ... in the prior case is not distinguishable. The sole change is that the new comprehensive zoning ordinance now uses the words of the charter in requiring only a majority vote. The charter provision is the same now as it was then. If the charter did not supersede the statute then, the charter and ordinance do not conflict with or supersede the statute now. The statute applies. A three-fourths vote is required. ..."

A careful reading of that decision shows that the court was not considering the same ordinance. There the issue related to the zoning ordinance of 1955, not the one enacted in 1963. The difference in the vote provisions

of the two ordinances justifies the different results reached on this issue by the two courts.

Roosevelt's final argument is that the statute prevails over the ordinance because the zoning ordinance "carries with it an extra-territorial effect." The argument continues:

". . . This is so because much of the property adjacent to the KLZ site, including some of the plaintiffs' in error here, is situated not in Englewood, but either in an unincorporated part of Arapahoe County or in the City of Cherry Hills Village, another home rule city. This court so held in *Roosevelt v. Beau Monde,* 152 Colo. 567, 384 P.2d 96, when it discussed not only the impact of zoning upon adjacent property and property owners outside of the jurisdiction of the zoning municipality, but also the impact of zoning on the very land with which we are here involved in this litigation, and also many of the same parties."

Roosevelt then proceeds to his conclusion that because this court in *Beau Monde* recognized that those seeking to intervene would be bound by the judgment in that case; that, as property owners they had a right to rely upon existing regulations, the same as those residing within the municipality, and that because of the extra-territorial effect of the KLZ rezoning, it follows that such zoning is not local and municipal in nature, but of state-wide concern.

We think that Roosevelt misreads *Beau Monde.* The court was not there concerned with what was *local* and what was of *state-wide concern.* The court was construing C.R.C.P. 24(a), which in pertinent part provides:

"(a) ... Upon timely application *anyone shall* be permitted to intervene in an action. ... (2) when the representation of the applicants' interest by existing parties *is or may be inadequate* and the applicant is or may be bound by a judgment in the action; ..."

In discussing the intervention, Mr. Justice Hall pointed out that the six intervenors who lived in Cherry Hills

Village were not parties by representation to that litigation, and so were not represented by counsel employed by Englewood, and consequently were unrepresented. He pointed out that the intervenors owned property immediately adjacent to the subject property and that the construction of the shopping center would confer similar benefits and impose similar detriments on them, concluding with this ruling,

"Clearly those residing in Cherry Hills Village are entitled to intervention and representation by counsel of their choosing."

■■ Amendment XX to the Colorado constitution confers on home rule cities every power possessed by the general assembly in granting charters generally. *Fishel v. Denver,* 106 Colo. 576, 108 P.2d 236. We have examined Chapter 139, article 60, which grants the zoning power to statutory cities and towns with the view to determining whether there are any extra-territorial provisions. We find none.

■■ We hold that zoning under Colorado constitution, art. XX, § 6, is a local and municipal matter. Roosevelt was accorded due process, notice and a hearing having been provided.

We therefore conclude that Roosevelt was accorded all of the rights contemplated by the law as it now exists. *Beau Monde, supra,* and Chapter 139, article 60, require no more.

The judgment is affirmed.