498 P.2d 667

**WARREN IRRIGATION COMPANY, a corporation, Plaintiff and Appellant,**

**v.**

**Milton T. BROWN and Florence H. Brown, his wife, Defendants and Respondents.**

**No. 12620.**

Supreme Court of Utah.

June 26, 1972.

---

15. State v. Baran, 25 Utah 2d 16, 18–19, 474 P.2d 728 (1970).

**104**

E. J. Skeen, of Skeen & Skeen, Salt Lake City, for plaintiff and appellant.

Edward W. Clyde, of Clyde, Mecham & Pratt, Salt Lake City, for defendants and respondents.

CALLISTER, Chief Justice:

Plaintiff initiated this action to quiet title to a certain water right, hereinafter identified as the Skeen right. In the alternative, plaintiff sought to diminish the quantity of water to be furnished under this right and to increase the cost. Upon trial before the court, a decree was rendered declaring defendants the owners of the right and granting them damages in a sum equal to the rental fees for water that defendants had been compelled to procure as a substitute for the water withheld by plaintiff. Plaintiff appeals therefrom.

In 1903, plaintiff's remote predecessor in interest, Utah Light and Power Company, conveyed by deed to Lyman Skeen, a 110-acre feet of water, to be furnished and delivered by the grantor during the season from April 15 to October 15. The deed provided that the water was to be used by the grantee and his heirs and assigns upon certain described lands, and not otherwise; the specified acreage was approximately 147 acres. The deed further specified that the water was to be furnished from existing rights of the grantor in the waters of Weber River, Mill Creek and Four Mile. The deed further provided that the grantee would pay 30¢ per acre for each acre of water to which he was entitled each season.

In 1904, in exchange for the aforementioned deed, Lyman Skeen and his wife Anna conveyed to plaintiff's immediate predecessor in interest, Utah Light and Railway Company, all their rights in the Salt Creek and Four Mile streams together with their rights in the Salt Creek Irrigation Company.

In 1907, plaintiff succeeded to the interests of Utah Light and Railway Company; however, the interests conveyed were subject to the Skeen right as represented in the deeds of exchange. The Skeen right is not represented by stock in the plaintiff corporation, and the rights are different from those of the shareholders. The owners of the Skeen right are only entitled to waters from the natural sources specified in the deed, which flow into the canal by gravity. Furthermore, their assessment for the delivered water is limited to $33 per season. In contrast, the shareholders receive a greater quantity per share of water stock, and the water comes by means of reservoirs and pumps constructed by plaintiff. Plaintiff also purchases water from other sources. The shareholders pay an assessment equal to their pro rata share of the expenses. Since 1926, plaintiff has been desirous for the successive owners of the Skeen right to exchange and convert to shares in the company.

In 1914, Lyman Skeen initiated an action against Warren Irrigation, contending that the company had cut down the periods of use of the water and threatened to so continue; Skeen prayed for a permanent restraining order. The company answered and admitted the rights it had purchased were subject to the deeds of exchange. Subsequently, the parties entered into a stipulation, wherein it was agreed that in lieu of the delivery by the company to Skeen of water as provided in the 1903 and 1904 deeds, that beginning with the 1915 season and each year thereafter, the company would deliver to Skeen, his heirs and assigns, measured at the headgate of the Skeen Ditch, a specified quantity of water, for which Skeen would pay $33 per year. This stipulation was incorporated in a decree which adjudged that Skeen had the right to the use of five second feet of water for the periods specified. The company was required, however, only to make delivery from the natural source of supply, exclusive of its pumping plant.

In 1938, Mary E. Brown and David A. Skeen filed an order to show cause, alleging that they were the successors in interest to Lyman Skeen, and were the present owners of the rights decreed to Skeen in 1914, that the company had violated the decree by withholding water without justification. The company filed an answer and admitted the ownership of Brown and Skeen. The court entered an order declaring the petitioners were entitled to the delivery of the water in accordance with the 1914 decree.

Defendants, in 1939, became the successors in interest to Mary E. Brown and David Skeen. In 1969, the company determined that defendants were entitled to no more than one half the water set forth in the 1914 decree because they owned less than one half of the land described in the 1903 conveyance to Lyman Skeen. The record reveals that Lyman Skeen owned 160. acres; in 1922, he conveyed 40-acre parcels to each of his two sons; and 80 acres he retained were subsequently conveyed by mesne conveyance to defendants. The company contends that by means of the 1903 conveyance, the water right was appurtenant to the land; and, since Lyman did not reserve the right in his deed, the water right passed to the sons. The sons have never claimed the water; and, they have, in fact, owned other water rights, which they have used on the land. Furthermore, Lyman continued to use the water on the land he retained, as did his successors in interest, with the full knowledge of plaintiff for fifty years. During this time the company assessed and collected fees from the users. As previously noted, in the 1938 litigation, Lyman's successors in interest alleged their ownership of the Skeen rights, which the company admitted.

The trial court, in the instant action, found that the 1914 decree was in lieu of the 1903 deed (there was no limitation on the land upon which the water was to be used in the 1914 decree). In the 1938 decree, Skeen's successors were adjudged entitled to receive all the water decreed in the 1914 decree. The court found that the water did not pass appurtenant to the land in the conveyances in 1922 to Lyman Skeen's sons; the sons had never claimed the water, and plaintiff was not in a position to claim it for them. The trial court further found that the rights and obligations of the parties had been determined by the two decrees, and the matter was now res judicata. The court observed that after living with these decrees for nearly fifty years, plaintiff was not in a position to raise issues, which were or could have been previously settled. The court found that plaintiff was barred by conduct, laches, and acquiescence as to the use of water outside of the 147-acre tract specified in the 1903 deed. Furthermore, the 1914 decree was in lieu of the 1903 deed and contained no such limitation.

On appeal, plaintiff invokes a condition contained in the 1904 deed from Skeens to Utah Light and Railway Company and contends that by the terms of this condition subsequent that upon plaintiff's wilful refusal to deliver the water in accordance with the 1903 deed, defendants' rights to this water ceased and determined.

In the 1904 deed, the grantors, Lyman and Anna Skeen, conveyed their interest in Salt Creek and Four Mile streams to Utah

Light and Railway Company. The deed recited:

> Provided always, . . . that in case the Utah Light & Railway Company, . . . or any of its or their assigns, or successors in interest, shall wilfully refuse to carry out the agreement to deliver water which is contained in the deed, to the party of the first part hereto [Skeens], which deed is dated in the caption 11th of February 1903, then the grant of the water right in their deed shall cease and determine, and the parties hereto of the first part [Skeens] shall be restored to all the right they had prior to the giving of this deed, and no length of time shall vary their part of this agreement.

█ The grantors, Skeens, made a conveyance subject to a condition subsequent, namely, their grant of the water rights would cease and determine upon the failure of the grantee to deliver water in accordance with the 1903 deed. The grantee may not breach the condition and then declare a forfeiture of the grantor's rights as plaintiff here asserts; this power resides exclusively with the grantor.

The breach of a condition subsequent in a deed or will, although the deed or will contains words of forfeiture and re-entry, does not ipso facto produce reverter of title, inasmuch as performance of the condition or a breach thereof may be waived by the grantor or testator and the condition be dispensed with. . . .[1]

Plaintiff further urges that the trial court erred in its determination that defendants can irrigate land other than described in the 1903 decree.

█ Any of the alternative grounds offered by the trial court is sufficient to sustain its ruling. In 1938, when defendants' predecessors in interest initiated proceedings to compel plaintiff to deliver water in accordance with the 1914 decree, the issue of ownership was asserted and admitted. Since plaintiff failed to raise this issue or litigate it, the doctrine of res judicata applies.[2] In the alternative, an appurtenant water right may be sold and conveyed separately from the land by the provisions in Sec. 73–1–11, U.C.A.1953.[3] Lyman Skeen had the right to convey the water right with the land upon which he had utilized the water, even though the tract included 30 acres which were not within the description in the 1903 deed. Furthermore, the 80 acres upon which this water.

1. 28 Am.Jur.2d, Estates, Sec. 162, p. 287.

2. Wheadon v. Pearson, 14 Utah 2d 45, 46, 376 P.2d 946 (1962).

3. See Cortella v. Salt Lake City, 93 Utah 236, 248, 73 P.2d 630 (1937).

has been used since at least 1922, was included in the claim filed by plaintiff in the general adjudication of the Weber River in the 1930's.

 Plaintiff further urges that the trial court erred in its ruling that defendants were obligated to pay $33 per year for the water supplied. Plaintiff asserts that this sum is merely for the water and that in addition the defendants should be required to pay the reasonable expenses for the operation and maintenance of the company. Plaintiff invokes Sec. 73–1–9, U.C.A.1953, which provides for contributions between joint owners of a ditch or reservoir.

In Gunnison-Fayette Canal Company v. Roberts,[4] this court stated:

> In the absence of an enforceable agreement between joint users of a canal specifying the rights and obligations of the parties with respect to the payment of the canal's expenses, the statute (section 73–1–9, U.C.A.1953) is controlling.

Since the 1914 decree, the parties have had an enforceable agreement with respect to defendants' obligation for the delivery of the water. In light of the practice of the parties since 1914, the distinction urged by plaintiff is untenable.

The other points on appeal do not merit discussion. The judgment of the trial court is affirmed. Costs are awarded to defendants.

TUCKETT, ELLETT and CROCKETT, JJ., concur.

HENRIOD, J., does not participate herein.

---

4. 12 Utah 2d 153, 157, 384 P.2d 103 (1961).