Douglas N. HOLMGREN, Keith N. Anderson, Robert M. Brough, Ted W. Burt, Mich Fukui, Alvin R. Jeppson, Oleen Nelson, J. Glen Nelson, Milton L. Roche, Ross Rudd, David R. Waldron and George Crozier, Jr., on behalf of themselves and all others similarly situated, Plaintiffs and Respondents,

v.

UTAH–IDAHO SUGAR COMPANY, a Utah Corporation, and Bear River Canal Company, Inc., a Utah Corporation, Defendants and Appellants.

No. 15098.

Supreme Court of Utah.

July 28, 1978.

Wilford M. Burton and Macoy A. McMurray of McKay, Burton, McMurray & Thurman, Salt Lake City, for defendants and appellants.

Edward W. Clyde and Elliott Lee Pratt of Clyde & Pratt, Salt Lake City, for plaintiffs and respondents.

WILKINS, Justice:

This is a class action by which plaintiffs, representing a class of water users numbering in excess of 1,600, sought declaratory judgment determining their rights under certain "deeds of perpetual water rights" issued to members of the plaintiff class by Defendant Utah-Idaho Sugar Company, pursuant to contracts entered into between said members of the class and said defendant. From judgment entered by the District Court, Box Elder County, in favor of plaintiffs, defendants appeal.

All statutory references are to Utah Code Annotated, 1953, as amended. References to Rules are to Utah Rules of Civil Procedure.

Defendant Utah-Idaho Sugar Company (hereinafter "Sugar Company") was the owner of certain rights to the use of water from Bear River. In 1912, the Sugar Company conveyed part of its rights to Utah Power and Light Co., reserving to itself rights to use water amounting to 900 cubic feet per second between May 1st and October 31st (the irrigation season) and 150 cubic feet per second between November 1st and April 30th. During the next 60 years the Sugar Company entered into contracts with members of the plaintiff class for distribution of water during the irrigation season, for use on land in the Bear River Valley, principally in Box Elder County.

Upon payment of the principal sum of money as set forth in each contract, the Sugar Company executed and delivered to each plaintiff, or his predecessor in interest, a "deed of perpetual water right", for use on the land specifically described in each deed. The contracts contain a covenant on the part of the Sugar Company to distribute the water by means of its canals and lateral systems. Each plaintiff agreed to pay an annual assessment in addition to the initial consideration. The annual assessment charge is set in each contract in a specific dollar amount. The contracts entered into in 1912 provide for an annual assessment of $1.00 per year for water from the West canal and $1.50 per acre per year for water from the East canal. In subsequent contracts the assessments were increased from time to time, until the 1960's when new contracts provided for an assessment of $4.00 per acre per year. Later, in new contracts the assessment amounts were left blank.

Annual assessment charges in the amounts set in the respective contracts were charged by the Sugar Company until 1973, and assignments of the contract rights and the deeds were honored by the Sugar Company without modification of the original annual assessments. In 1973 the Sugar Company organized the Defendant Bear River Canal Co., Inc., (hereafter, "Canal Company") and transferred to it all of the Sugar Company's interest in the canal and lateral systems, together with the Sugar Company's water rights. The Canal Company is a wholly owned subsidiary of the Sugar Company.

Immediately after the organization of the Canal Company, officers of that company advised the water users that the annual assessment charges were insufficient to maintain the canals and lateral systems and would have to be modified in order to meet operating costs. Letters were sent to the water users charging a uniform assessment of $2.63 per acre and informing the water users that the Company would in the future make assessments to provide a return on capital investment for its shareholder, the Sugar Company. This assessment was raised in 1974 to $3.17, at which time references were made in the letters sent with the assessments to a proposal to sell the canals and lateral systems to the water users for a price in excess of $2,500,000. In 1975 the assessments were raised to $4.72, of which $1.00 was designated a return on investment. In 1976 the assessment was raised to $10.89 which included an 8.4% return on capital for the Canal Company's shareholder. The 1976 assessment was enjoined by the District Court during the pendency of this action.

This action was filed in October, 1974. In November of that year, the Canal Company applied to the Public Service Commission of Utah for a Certificate of Public Convenience and Necessity seeking a determination that the Canal Company is a public utility subject to the exclusive jurisdiction of the Public Service Commission pursuant to the provisions of Section 54–2–1(30), and a determination by said Commission of reasonable rates and tariffs to be charged to the water users.[1] Defendants then moved the Court to abate this action until a determination was made by the Public Service Commission, which motion was denied.

Defendants thereafter defended this action asserting that the Canal Company is a public utility; that it is selling water as a commodity to the plaintiffs and may establish a reasonable, uniform annual assessment for that water; that performance of its obligations under the contracts has become financially impossible, at the rates of assessment set by each contract; and that defendants are no longer bound by said annual assessments or "rental".

The District Court found that the Sugar Company had, by deed, conveyed water rights to the individual plaintiffs amounting to some 800 cubic feet of water per second during the irrigation season; that the water rights were appurtenant to the land of each plaintiff as described in the respective deeds; that the Canal Company was the owner of the canals, laterals and distribution systems, but that such "ownership is burdened by the prior rights of the plaintiffs and the class they represent to have said canals, laterals and distribution systems utilized to convey water accruing to them under their deeded water rights"; that the transfer of this system to the Canal Company did not release the Sugar Company of its obligations under the contracts; that the delivery of water through the canal system is not the sale of a commodity or a product, and the contracts are not contracts to rent facilities; that the annual assessment is an amount agreed to by the plaintiffs to be used for the purpose of maintaining the canals and lateral systems; that the right of the defendants to make the assessment is based on contract, and there is no right in the defendants to assess otherwise; that the plaintiffs have no duty to contribute to the operation and maintenance of the canals during the winter, or for the furnishing of water to the Sugar Company, and that the defendants

---

1. No action has been taken by the Commission on that application.

had failed to prove that the performance of their obligations had become impossible.

The judgment provides that the plaintiff class is entitled to the return of monies collected in excess of the amounts provided by contract, and that the Court should retain jurisdiction for determination of those amounts. The judgment further provides that the within action should not be a bar to the defendants' making an assessment for the balance of the contract amount in those cases in which the contract amount exceeded the amounts actually assessed.

■ On appeal, defendants reiterate their position that the Canal Company is a public utility, and ask this Court to so declare. However, the findings of the District Court are substantially supported by the evidence in this case. The Sugar Company conveyed portions of its rights to the use of the water to each of the members of the plaintiff class, by deed, in clear and unambiguous language, and there is nothing in any of the documents which would indicate any intent to the contrary. The Canal Company is not a public utility within the perimeters of this case. It is not selling a commodity. The "service" if it be such, of the delivery of water, is a matter of contract to a limited class, not to the *public at large.*[2]

■ Defendants challenge the order of the Court ordering publication of notice to the plaintiff class and assert that notification by publication is inadequate under Rule 23(c)(2). They contend that the list of names and addresses of the 1,600 water

users was available, and notice should have been given directly to them. The provisions of Rule 23(c)(2), however, are applicable only to class actions brought under Rule 23(b)(3),[3] and not to actions brought, as this one was, for declaratory judgment, under Rule 23(b)(2). Here, the Court found that the action was brought pursuant to Rule 23(b)(1) and (2), and defendants have failed to show that notice by publication as ordered by the Court is inadequate in such actions.

Defendants next contend that the provisions in the contracts concerning (1) the perpetual water right, and (2) the annual assessments, are severable, and that though the parties may have intended the water right to be perpetual, the annual assessment was not intended to be a perpetual right, and that the Canal Company, since a reasonable time for the performance of the original contracts has expired, may now establish new, uniform assessment rates.

■ It is inconsistent and unlikely, however, that the parties intended that the right to use the water should be a perpetual right, but not the right to have water *delivered to a point from which it may be used.* The contracts are not void or voidable merely because they may be of long duration or last in perpetuity.[4] Where a contract clearly provides for a perpetual right, it will not be held to be terminable so long as the consideration therefor is fully executed.[5] Defendants' argument finds no support in any of the contracts, deeds or

---

2. *Garkane Power Co. v. P.S.C.,* 98 Utah 466, 100 P.2d 571 (1940); *State v. Nelson,* 65 Utah 457, 238 P. 237 (1925); *San Miguel Power Association v. Public Service Commission,* 4 Utah 2d 252, 292 P.2d 511 (1956). In *Medic-Call, Inc. v. Public Service Commission of Utah,* 24 Utah 2d 273, 470 P.2d 258 (1970), this Court adopted the following test for determining the public utility question:

> The test is, therefore, whether or not such person holds himself out, expressly or impliedly, as engaged in the business of supplying his product or service to the public, as a class, or to any limited portion of it, as contradistinguished from holding himself out as serving or ready to serve only particular individuals.

3. See Rule 23(c)(2); *Eisen v. Carlisle,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1970), construing the federal rule, which contains the same provisions.

4. See, e.g., *Salt Lake City v. State of Utah,* 22 Utah 2d 37, 448 P.2d 350 (1968); *Warren Irrigation Co. v. Brown,* 28 Utah 2d 103, 498 P.2d 667 (1972); *Portland Section of Council of Jewish Women v. Sisters of Charity of Providence in Oregon,* 266 Or. 448, 513 P.2d 1183 (1973).

5. See *Portland Section of Council of Jewish Women,* supra, note 4.

other documents, each of which refers to a "perpetual water right". Further, the Sugar Company treated the annual assessments as set in the contracts as binding on it for a period of 65 years, during which time that company recognized that the plaintiff class had a right to have the water delivered through the canals. There is ample evidence to support the Court's finding that the plaintiff class has a vested right to have the defendants' canals utilized for the delivery of water to them, subject only to the payment of the annual assessment fee, as contracted for.

■ Defendants argue that the contracts are void or voidable under the doctrine of impossibility of performance, due to the excessive rise in the cost of operating and maintaining the canals since the contracts were entered into. The doctrine of impossibility of performance is one by which a party may be relieved of performing an obligation under a contract where supervening events, unforeseeable at the time the contract is made, render performance of the contract impossible.[6]

The evidence here showed that approximately $97,000 is collected each year from the plaintiff class at the rates specified in the contracts. Defendants' former canal superintendent testified that the total expenditure for year-round operation of the canals and lateral systems had risen to $264,485 for the year ending February, 1977. No evidence was presented as to what part of these expenses is attributable to the use of the canals by the Sugar Company, which uses a substantial amount of water and has the exclusive use of the canals during the winter months. Nor was any evidence presented as to what portion of these total costs is attributable to the plaintiffs' use of the canals for the delivery of water for irrigation purposes. The burden of producing such evidence is on the defendants as a part of their defense of impossibility of performance and they have failed in that burden.

■ Defendants contend that the contracts are void, as they violate public policy and statutory prohibitions against discriminatory classification and rates among water users, and that they violate the Unfair Practices Act.[7] All of defendants' arguments depend upon a determination by this Court that the Canal Company is a public utility or that the District Court erred in finding that plaintiffs are the owners of a vested water right, both of which we have discussed, ante. As we have affirmed the District Court on those points, the defendants' arguments are without merit.

■ Defendants challenge several findings of fact and portions of the judgment in which the Court states that the assessment charges were intended to be used for the purpose of maintaining the canals and lateral systems during the irrigation season only, and that the defendants are not entitled to use such funds for other purposes. Defendants argue that nothing in the contracts so limit the use of these funds; that the funds have been used for general corporate purposes for seventy-five years and further, that the said findings are ambiguous and conflicting. Defendants argue, for example, that the requirement that the money be used for maintaining the canals "during the irrigation season only", is impractical, and forces defendants to close the canals during the irrigation season for the purpose of cleaning, thus preventing them from performing their obligation to deliver water to the plaintiff class during that season. But there is no language in the judgment to compel this strained interpretation by defendants. Nothing in the judgment indicates that the defendants must clean the canals during the summertime, nor that the maintenance of the canals must *occur* during that time.

In essence the Court determined that the Sugar Company must bear the costs of

---

6. See generally, *Mineral Park Land Co. v. Howard,* 172 Cal. 289, 156 P. 458 (1916); *City of Vernon v. City of Los Angeles,* 45 Cal.2d 710, 290 P.2d 841 (1955); *Savage v. Peter Kiewit Sons' Corp.,* 249 Or. 147, 432 P.2d 519 (1968);

*City of Littleton v. Employer's Fire Insurance Co.,* 169 Colo. 104, 453 P.2d 810 (1969).

7. Section 13–5–1, et seq.

maintaining the canals necessary for its own use, and that the defendants should not be permitted to collect funds from the plaintiff class which were intended to be used for plaintiff's benefit, and then divert those funds to other purposes. We do not find any conflict or ambiguity in the findings challenged by defendants, and said findings are affirmed.

Defendants also challenge the findings and judgment with respect to the right to recover damages by the plaintiff class.

First, defendants contend that plaintiffs voluntarily paid in conformity with the assessments made in excess of the contract amounts and thereby waived their right to recovery. The evidence shows that plaintiffs paid the increased assessment charges under duress because they were notified that if they did not pay, they would not receive their water. There was no voluntary payment, and this argument is without merit.

Next defendants argue that the Sugar Company is not a proper party in this action as it divested itself of all rights under the contracts and in the canals, and the modified assessments were made only by the Canal Company. The District Court ruled, correctly, that the Sugar Company could not divest itself of its obligations under the contracts. The Sugar Company remains an obligor, and the judgment against it is valid.

Last, defendants contend that the Court erred in failing to allow defendants a setoff against the award granted to plaintiffs, in accordance with defendants' counterclaim, for recovery of those amounts by which certain members of the plaintiff class were underassessed by the defendant Canal Company. With this contention we agree.

Paragraphs 15 and 16 of the judgment states:

15. Plaintiffs and the class they represent are not estopped or barred by any principle of law or equity from collecting the assessment extracted from them by the defendants, in excess of their respective contract amounts. Said payments were not voluntary, and the plaintiffs and the class they represent are entitled to recover from the defendants, jointly and severally, all sums paid by way of assessment, in excess of their respective stated contract annual assessment.

16. Where the contract amount is greater than the amount assessed, this action shall not be a bar to the defendants making an assessment for the balance of the contract amount.

The court should and does hereby retain jurisdiction to determine the amount owed to each plaintiff and each member of the class represented by the plaintiffs, and to enter judgment for any excess collected, together with interest at 8% per annum from the date of said payment until said excess has been repaid, in accordance with the rights of the parties, as declared hereby.

The Court thus retained jurisdiction for the purpose of determining the amounts by which members of the plaintiff class were overassessed, and made no provision to offset those amounts by any underassessments. Those members of the plaintiff class whose contracts designate either three or four dollars as the annual assessment were overassessed one or more years, but underassessed in other years, and defendants are entitled to an offset in accordance with their counterclaim in the amount of the underassessment before judgment is entered in favor of the members of the plaintiff class.

The declaratory judgment entered by the District Court is modified to allow for such offsets against the claims of individual members of the plaintiff class who may have been underassessed in any year, but not against the class as a whole, and is affirmed as modified. Costs to plaintiffs.

ELLETT, C. J., and MAUGHAN, CROCKETT and HALL, JJ., concur.