470 P.2d 258

**MEDIC–CALL, INC., Harold Jensen, M.D., Professional Exchange Answering Service and Industrial Communications Co., Plaintiffs,**

v.

**PUBLIC SERVICE COMMISSION of Utah et al., Defendants.**

**No. 11944.**

Supreme Court of Utah.

May 26, 1970.

Walter P. Faber, of Richards & Watkins, Salt Lake City, for plaintiffs.

Vernon B. Romney, Atty. Gen., Verl R. Topham, Asst. Atty. Gen., Salt Lake City, for defendants.

ELLETT, Justice.

This case is before us on a writ of certiorari based upon stipulated facts, and the only question to be resolved is whether or not the defendants have jurisdiction over the service rendered by plaintiffs. The defendants asserted authority pursuant to Section 54–2–1(30), U.C.A.1953, as amended (Replacement Volume 6, 1969, Pocket Supplement) which insofar as material reads:

The term "public utility" includes every * * * telephone corporation, * * where the service is performed for * * the public generally * * *. And whenever any * * * telephone corporation * * * performs a service for * * the public, * * * for which any compensation or payment whatsoever is received, such * * * telephone corporation * * * is hereby declared to be a public utility, subject to the jurisdiction and regulation of the commission and to the provisions of this title. * *

The stipulated facts show that the transmission facilities have capacity to serve approximately 100 physicians with small portable telephonic receiver units called "beepers." The beepers can only receive messages, and no transmission can be made by the physicians. When an emergency telephone call to a physician is received by the Professional Exchange Answering Service through regular telephone communication the Professional Exchange Answering Service activates the transmitting equipment purchased by the physicians and signals the particular physician on his beeper that a telephone call has been received. The physician cannot respond to the call via the beeper but must use regular telephone communication if he desires to speak either to the Professional Exchange Answering Service or to a patient who has called in.

The equipment purchased by the physicians is not connected to the regular telephone communications network, and a patient cannot personally contact a physician directly through the system. Only physicians as such can use the system and must use it on a non-profit, cost-sharing basis as required by the Federal Communications Commission. Only licensed physicians are eligible to receive the beeper service by joining the association of physicians and agreeing to be bound by the association's rules and regulations.

Without holding that the plaintiffs are a telephone corporation, we will assume that they are and then decide if the service rendered is for the public for which a compensation is received.

The general law is found in 73 C.J.S. Public Utilities §§ 2 and 7b:

§ 2.

* * * * * *

\* \* \* The test is, therefore, whether or not such person holds himself out, expressly or impliedly, as engaged in the business of supplying his product or service to the public, as a class, or to any limited portion of it, as contradistinguished from holding himself out as serving or ready to serve only particular individuals.

\* \* \* It has been stated that the true criterion by which to determine whether a plant or system is a public utility is whether or not the public may enjoy it of right or by permission only. \* \* \*

§ 7b.

\*   \*   \*   \*   \*   \*

Accordingly, a utility must act toward all members of the public impartially, and treat all alike; and it cannot arbitrarily select the persons for whom it will perform its service or furnish its commodity, or refuse to one a favor or privilege which it has extended to another, since the term "public utility" precludes the idea of service which is private in its nature and is not to be obtained by the public. \* \* \*

This court has had occasion to define the term "public utility" in several cases. In that of State ex rel. Public Utilities Comm. of Utah v. Nelson, 65 Utah 457, 238 P. 237 (1925), a corporation maintained an outdoor camp in Big Cottonwood Canyon the purpose of which was to provide an outing camp at minimum expense to persons not otherwise able to obtain camping facilities and conveniences. The corporation had a permit from the Government to operate the camp on the national forest reserve. Anyone desiring to attend the camp had to make arrangements through the office of the National Forest Service. Approximately 900 persons per year attended the camp. To accommodate its guests, the corporation entered into a contract with the defendant Nelson to transport by automobile omnibus guests to and from the camp. The passengers were required to secure tickets from the corporation in order to entitle them to ride in the omnibus. The Commission brought an action to restrain Nelson from operating the service, since he had no permit from it to do so.

In holding that the Commission had no authority to regulate the business of Nelson, this court said at page 462 of the Utah Reports, 238 P. at page 239:

No one may successfully contend that it is competent for the Legislature to regulate and control in such respect a mere private business or to declare a private business to be public service or a public utility. In other words, the state may not, by mere legislative fiat or edict, or by regulating orders of a commission, convert mere private contracts or a mere private business into a public utility or

make its owner a common carrier. [Citations omitted.] So, if the business or concern is not public service, where the public has not a legal right to the use of it, where the business or operation is not open to an indefinite public, it is not subject to the jurisdiction or regulation of the commission. * * *

Another Utah case in point is that of Garkane Power Co. v. Public Service Commission, 98 Utah 466, 100 P.2d 571 (1940). There, Garkane was incorporated for the purpose of generating or acquiring electric energy to distribute and sell to its members only. Any excess money collected over and above the costs of operation was to be returned to its members prorated on the basis of electricity consumed. Membership was restricted to persons, firms, corporations, or bodies politic who (1) paid membership fee of $5.00; (2) agreed to purchase the minimum amount of electricity as set by the corporation; and (3) agreed to comply with the articles of incorporation, bylaws, and rules and regulations of the board of directors. An applicant was accepted for membership only by vote of the board or of the members.

The Public Service Commission assumed jurisdiction over Garkane. In holding that the Commission had no authority in the matter, this court at page 473 of the Utah Reports said, 100 P.2d at page 574:

We hold, therefore, that a non-profit electric cooperative which serves only its members, and is completely consumer owned with each consumer limited to one membership, is not a public utility within the purview of our statute.

In the case of San Miguel Power Association, et al., v. Public Service Commission, et al., 4 Utah 2d 252, 292 P.2d 511 (1956), the plaintiffs were non-profit electric power corporations owned entirely by their members, as was the case in Garkane, supra. The Utah Power and Light Company (a public service corporation) filed an application with the defendant for a certificate of convenience and necessity to extend its power lines into the area served by the plaintiffs. The plaintiffs protested the application of the Utah Power and Light Company, but the Commission refused to permit them to intervene claiming that they were not public utilities. The plaintiffs brought certiorari, and in affirming the ruling of the Commission, this court at page 254 of the Utah Reports said, 292 P.2d at page 512:

Plaintiffs are non-profit electric cooperatives which can serve only their own members. * * * We can discern no valid distinction between these plaintiffs and the cooperatives in the Garkane case. Both require membership in the association before service is given and although membership may be easily obtained, with-

out such membership no member of the general public is legally entitled to service. * * * Since plaintiffs cannot legally be required to serve the public generally, they are not public utilities and the Commission correctly so decided.

In the instant matter service is rendered only to physicians who share the costs of operation. The service is purely a private arrangement and does not have the elements of the public utility. The fact that ailing patients may get service from their doctor sooner because of the beeper service does not make the beeper service available to the public. The service is comparable to that which would be rendered by runners or call boys to notify doctors that they were wanted on the phone. One wonders just how the defendant would go about regulating the service even if it had the power to do so.

If defendants can regulate the service rendered by the plaintiffs herein, could they not with equal propriety regulate the semaphore signaling of the boy scouts or the smoke signals of the Indians on a hunting expedition?

The plaintiffs are not performing service as a public utility, and the defendants have no authority to regulate them. The order made by the Commission is set aside. No costs are awarded.

CROCKETT, C. J., and CALLISTER, TUCKETT and HENRIOD, JJ., concur.