David R. WILLIAMS, dba Industrial
Communications, Plaintiff
and Appellant,

v.

HYRUM GIBBONS & SONS CO., a Utah
Corporation, Defendant and
Respondent,

and

North Utah Community T. V., a Utah
Corporation, Intervenor and
Respondent.

No. 16024.

Supreme Court of Utah.

Aug. 24, 1979.

David Lloyd and Walter P. Faber, Jr., of Watkins & Faber, Salt Lake City, for plaintiff and appellant.

B. H. Harris, Logan, for Hyrum Gibbons & Sons Co.

L. Brent Hoggan, Logan, for North Utah Community T. V.

MAUGHAN, Justice:

Plaintiff initiated this action to condemn a one-tenth of an acre parcel of land for the purpose of constructing and operating a fixed base receiver/transmitter station for mobile telephone and radio paging devices in the Logan, Utah area. The trial court permitted North Utah Community T.V., a community television antenna company, CATV to intervene. Upon trial, the court ruled plaintiff had the power of eminent domain, but denied the relief sought in the complaint on the ground the taking of the particular site was not necessary to the public use of plaintiff where there were other satisfactory alternative sites in which plaintiff would not create any risk of interference with other public use facilities. The judgment of the trial court is reversed, and the cause is remanded to determine the damages to which the condemnee, Gibbons & Sons Co., is entitled. All statutory references are to Utah Code Ann., 1953.

Plaintiff is engaged in the business of installing and operating fixed based receiver and transmitter stations through the Wasatch Front area for mobile telephone and radio paging devices. For this business, plaintiff has a certificate of convenience and necessity issued by the Public Service Commission and a first class radio telephone license issued by the Federal Communications Commission. The radio telephone channels and equipment operation are authorized and regulated by the F.C.C., while plaintiff's service is regulated by the P.S.C. In 1975, plaintiff was authorized by the P.S.C. to furnish radio common carrier telephone service in the area of Logan, Utah, because of a public need therefor.

To institute service, it was necessary for plaintiff to locate a site for its fixed base station and antenna which must interconnect with the Mountain Bell Telephone system. The site was required to have both adequate elevation for coverage and close proximity to the service area for the authorized low-wattage radio signals to penetrate major buildings and activate the paging devices. After extensive study and testing by plaintiff's engineers, plaintiff concluded there was only one site which met the coverage and penetration requirements for adequate service to the Logan area; this site is the subject matter of this action. The site is vacant property located on a knoll in the foothills in the southeastern section of Logan.

Plaintiff and the condemnee could not agree on price, and this action was initiated. Community TV owns property adjacent to the site upon which it has located its CATV antenna which would be approximately 100 feet from the base station. (This antenna is described as the head-end of the television cable system operated by intervenor.) Community TV filed a motion to intervene which the court granted. In a memorandum decision the trial court ruled it granted the motion, not on the ground of the proximity of the movant's receiving station, but on the ground the movant had a valid interest in the determination of whether this particular site was necessary for the public purposes of the plaintiff.

At the hearing, plaintiff presented evidence that the site was the sole one which would enable it to render an adequate service on an economically feasible basis.

Plaintiff avers the location of the base station in any other area would necessitate the installation of two additional transmitters at other locations, which would double or triple the cost of service. Plaintiff's witnesses testified they did not know of an alternative site which would be economically feasible. Plaintiff Williams testified his company used quality equipment, and they had had no trouble with spurious harmonics or emissions. He expressed the opinion the equipment would not create interference, and any trouble with interference could be resolved with high pass filters.

Defendant-Intervenor's experts testified there was an eight out of ten chance of interference from plaintiff's equipment with television sets within a one-half mile radius and an eight out of ten chance of interference with Channel 6 on the cable television line. The opinion was expressed that to avoid interference, plaintiff's equipment should be located one or two miles from the head-end of the cable receiver.

In rebuttal, plaintiff Williams testified the company had two sites close to television receivers—Lewis Peak and Alta-Snowbird. At these locations, the television signal was of a very low grade, and the company had received no complaints of interference. He testified any interference problem can be solved by shielding. He expressed the opinion that the F.C.C. would not permit the company to interfere with 4,000 television sets.

The trial court found there were several other alternative sites which would perform the services offered by plaintiff. This particular site raised the likelihood that its installation would seriously interfere with the reception of several thousand television sets, including those sets in a proposed subdivision within a distance of one-half mile. The trial court further found the intervenor owned and operated a cable television system in Logan and adjacent communities. This cable system was operated under a certificate issued by the F.C.C. Intervenor provided cable service for approximately 4,000 homes and had an investment in excess of $800,000. The trial court found that the service provided by intervenor was a public use. The trial court found the taking of this particular site was not necessary to the public use of plaintiff where there were other satisfactory sites which would meet the same conditions, and in which plaintiff would not run any risk of interference with other public use facilities.

On appeal, plaintiff contends the trial court erred in several particulars, and defendant cross-appeals contending the trial court erred in its determination that the power of eminent domain had been conferred on plaintiff under § 78–34–1(8).

Section 78–34–1 provides:

Subject to the provisions of this chapter, the right of eminent domain may be exercised in behalf of the following public uses:

\*  \*  \*  \*  \*  \*

(8) Telegraph, telephone, electric light and electric power lines, and sites for electric lights and power plants.

Chapter 34, Title 78, does not define "telephone line." Such a tèrm is defined in the code under the Chapter concerned with public utilities. Section 54–2–1(21) provides:

The term "telephone line" includes all conduits, ducts, poles, wires, cables, instruments and appliances, and *all other real estate* and fixtures and personal property *owned, controlled, operated or managed in connection with or to facilitate communication by telephone whether such communication is had with or without the use of transmission wires.* [Emphasis supplied.]

Since the legislature has delegated its power of eminent domain to public utilities for certain uses, it is indeed appropriate to correlate the chapter on eminent domain with that concerned with public utilities. A consistent definition of "telephone line" in the two chapters is both logical and appropriate to accomplish the legislative objective of defining property devoted to a public use.

The term "telephone line" has a broad enough meaning to encompass a line of

communication that would include radio-telephone communications. The term signifies a transmission system, whether it be composed of wires, poles and supports, or transmitters, receivers, and antennas.[1] The case cited by defendants, *Minnesota Microwave Inc. v. Public Service Commission*,[2] in fact sustains the ruling of the trial court as to plaintiff's power of eminent domain. Therein the court observed that mobile telephone systems and other activities designed to supplement or to work in conjunction with existing telephone services, clearly fell within what is comprehended as "telephone service."

■ Defendants further urge that the taking herein was not for a "public use" to which the power of eminent domain is limited. First and foremost, the legislature has deemed a "telephone line" a public use in § 78–34–1(8). Secondly, a public use has been deemed as one which confers some benefit or advantage to the public.

> . . . Such public use is not confined to actual use by the public, but is measured in terms of the right of the public to use the proposed facilities for which condemnation is sought. As long as the public has the right of use, whether exercised by one or many members of the public, a "public advantage" or "public benefit" accrues sufficient to constitute a public use. . . .[3]

Plaintiff's business of providing radio telephone services which interconnect with existing telephone systems, and which are available to the members of the public, constitutes a public service.[4] The obvious public benefit or advantage from plaintiff's rendition of its public service is sufficient to constitute a public use.

Plaintiff contends the trial court erred in its interpretation and application of § 78–34–4(2) and (3), whereunder the court determined the taking of this particular property was not necessary.

Section 78–34–4 provides:

> Before property can be taken it must appear:
>
> (1) That the use to which it is to be applied is a use authorized by law;
>
> (2) That the taking is necessary to such use; and,
>
> (3) If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use.

Section 78–34–8(1) confers on the court the power to determine the conditions specified in § 78–34–4.

In *Salt Lake County v. Ramoselli*,[5] this Court stated that the power of eminent domain was not to be exercised thoughtlessly or arbitrarily, and the courts possess full authority to determine the proper limits of the power to prevent abuses in its exercise.

■ Where the legislature has conferred upon the court as in the case of § 78–34–8(1), the duty of determining the necessity of a proposed taking, the necessity must be established by evidence or the proceeding fails. Necessity does not signify impossibility of constructing the improvement for which the power has been granted without taking the land in question; it merely requires the land be reasonably suitable and useful for the improvement.[6]

The court in *Montana Highway Commission v. Crossen-Nissen Co.*,[7] interpreted a statute similar to § 78–34–4, and stated that the requirement that the condemnor

1. *Brannan v. American Telephone and Telegraph Company*, 210 Tenn. 697, 362 S.W.2d 236, 239 (1962).

2. 291 Minn. 241, 190 N.W.2d 661, 666 (1971).

3. *Montana Power Company v. Bokma*, 153 Mont. 390, 457 P.2d 769, 772–773 (1969).

4. *National Association of Regulatory Utility Commissioners v. Federal Communications Commission*, C.A.D.C., 1976, 173 U.S.App.D.C. 413, 417, 525 F.2d 630, 634.

5. Utah, 567 P.2d 182, 183 (1977).

6. 1 Nichols on Eminent Domain (3rd Ed.) § 4.11[4], pp. 4–202 to 4–203.

7. 145 Mont. 251, 400 P.2d 283, 284 (1965).

must show necessity for the property taken did not mean that it must be indispensible to the proposed project. The word "necessary" as used in the statute [93–9905, RCM 1947] connoted that the particular property taken was reasonably requisite and proper for the accomplishment of the purpose for which it was sought under the peculiar circumstances of each case.

Alaska has construed A.S. 09.55.270(2), viz., "the taking is necessary to the use," similar to Montana in *City of Fairbanks v. Metro Company*.[8] The court explained:

> . . . once the condemnor has presented sufficient evidence to support a finding that a particular taking is "reasonably requisite" for the effectuation of the authorized public purpose for which it is sought, particular questions as to the route, location, or amount of property to be taken are to be left to the sound discretion of the condemning authority absent a showing by clear and convincing evidence that such determinations are the product of fraud, caprice, or arbitrariness.
>
> . . .

The court's analysis of the evidence clearly reveals the application of the foregoing standard. The court observed the City had clearly met its initial burden of demonstrating its taking was reasonably necessary under the circumstances. The court continued:

> . . . Moreover, the evidence presented to the effect that the City's location of the sewer line on one side of the street as opposed to the other *might* entail higher acquisition and construction costs, and that a larger number of people were located on the other side by virtue of recent land development in the area, does not qualify as clear and convincing evidence that the City's determination was arbitrary or amounted to an abuse of discretion.

The foregoing precepts were expressed in *Postal Tel. Cable Company of Utah v. Oregon S.L.R. Company*:[9]

> . . . It is not a question whether there is other land to be had that is equally available, but the question is whether the land sought is needed for the construction of the public work. The necessity is shown to exist when it appears that it is necessary to take the land by condemnation proceedings in order to effectuate the purposes of the corporation. [Citation.] The respondent has the right to determine when and where its telegraph line shall be built. It may be said to be a general rule that, unless a corporation exercising the power of eminent domain acts in bad faith or is guilty of oppression, its discretion in the selection of land will not be interfered with. . .[10]

■ A review of the record in the instant case clearly establishes plaintiff sustained its initial burden of proof, viz., this particular taking was reasonably requisite to effect the authorized public purpose for which it was sought. The defendants presented no proof and the trial court made no finding that plaintiff's exercise of discretion in selecting this particular property was a product of bad faith, fraud, caprice, or arbitrariness. Plaintiff was entitled to condemn the property. Furthermore, since the property plaintiff sought to condemn was not already appropriated to a public use, subdivision 3 of § 78–34–4 was not applicable.

The issue of the potential interference of plaintiff's station with intervenor's cable system is strictly a matter of federal law and is within the jurisdiction of the F.C.C.

> . . . Unquestionably, federal legislation has pre-empted local regulation of radio transmission, including assignment of frequencies, interference phe-

**8.** Alaska, 540 P.2d 1056, 1058 (1975).

**9.** 23 Utah 474, 484, 65 P. 735, 739 (1901).

**10.** *Salt Lake County v. Ramoselli*, Note 5 supra, is in accord with *Postal Tel.Cable*; therein this Court affirmed the trial court's ruling that the attempted condemnation was clear abuse of discretion.

nomena, and the content of broadcast material. [Citations] . . .[11]

A review of the complex detailed regulations governing the authorizations for base stations [see 47 C.F.R. (1978), Subpart G—Domestic Public Land Mobile Radio Service, § 21.500 et seq.] clearly illustrates federal regulations have pre-empted control in this area.[12] Under 47 C.F.R., § 21.500, authorization for construction of plaintiff's base station is contingent on whether the public interest, convenience or necessity would be served by a grant of plaintiff's application. Intervenor will have an opportunity to set forth the interference issue before the F.C.C. If the F.C.C. undertakes to license one type of communication service and it appears likely the new service will degrade or impair the quality of existing service regulated by the F.C.C., the Commission is required under the public interest standard to balance the gains and losses to the public that will result from the changed conditions in both services.[13]

Having determined this matter by resolution of the fundamental issue, we do not reach other assigned error.

CROCKETT, C. J., and WILKINS, and HALL, JJ., concur.

STEWART, J., dissents.

---

11. *Schroeder v. Municipal Court of Los Cerritos,* 73 Cal.App.3d 841, 141 Cal.Rptr. 85, 87 (1977).

12. See *Fields v. Davis,* 31 Or.App. 607, 571 P.2d 511, 516 (1977) for the type of state regulation of mobile common carriers that has not been pre-empted by federal legislation.

13. *H. & B. Communications Corporation v. Federal Communications Commission,* C.A. D.C., 1969, 173 U.S.App.D.C. 413, 420 F.2d 638.