David R. WILLIAMS, dba Industrial
Communications, Plaintiff,

v.

PUBLIC SERVICE COMMISSION OF
UTAH: Brent H. Cameron, Commis-
sioner; James M. Byrne, Commission-
er; Brian T. Stewart, Commissioner,
Defendants.

David R. WILLIAMS, dba Industrial
Communications, Plaintiff and
Respondent,

v.

AMERICAN PAGING, INC., OF UTAH,
a corporation, Defendant
and Appellant.

MOBILE TELEPHONE, INC., a
corporation, Plaintiff and
Respondent,

v.

AMERICAN PAGING, INC., OF UTAH,
a corporation, Defendant
and Appellant.

Nos. 860313, 860314 and 860517.

Supreme Court of Utah.

March 10, 1988.

Keith E. Taylor, Michael L. Larsen, Brinton R. Burbidge, Salt Lake City, for Williams.

David L. Stott, Laurie L. Noda, Salt Lake City, for Public Service Comn.

Ted D. Smith, Salt Lake City, for Mountain States Tel. and Tel. Co.

David L. Wilkinson, Michael L. Ginsberg, Salt Lake City, for Div. of Public Utilities.

Patrick J. Oshie, Salt Lake City, for Committee of Consumer Services.

W.L. Johnson, Phoenix, for AT & T Communications.

Stuart L. Poelman, Larry R. Laycock, Salt Lake City, for American Paging.

Stephen R. Randle, Salt Lake City, for Page America.

Bryan L. McDougal, Salt Lake City, for Utah Cable TV Assn.

Kay M. Lewis, Salt Lake City, for Mobile Telephone.

Gregory Monson, William Christensen, Salt Lake City, for NewVector Communications, Inc.

DURHAM, Justice:

This proceeding consolidates a petition for review of a rule formulated by the Public Service Commission of Utah (PSC), a petition for review of the PSC's denial of an application for a certificate of public convenience and necessity (certificate), and an appeal in a Third District Court civil action for damages. Common to each of these actions is the propriety of the PSC's conclusion in both proceedings before it that it has no jurisdiction to regulate one-way paging communications services. In the civil action for damages, the trial judge found that one-way paging services are within the PSC's jurisdiction pursuant to this Court's decision in *Williams v. Public Service Commission*, 720 P.2d 773 (Utah 1986).

### I. Factual Background

A brief synopsis of the background of the dispute between the parties involved in this consolidated appeal is necessary. For greater factual detail, the reader is referred to *Williams v. Public Service Commission*, 720 P.2d 773, 773–75 (Utah 1986) (hereinafter *Williams I*).[1]

In 1962, the PSC granted a certificate to Mobile Telephone, Inc., authorizing Mobile to operate one-way and two-way paging systems. The PSC thereby tacitly exercised jurisdiction over one-way paging systems and continued to do so until 1983.

---

1. Although many parts of the record in *Williams I* may have been relevant to this consolidated appeal, the parties have failed to provide the *Williams I* record to this Court. We have therefore relied on the facts as presented in the *Williams I* opinion in several key areas.

During this period, the PSC granted several certificates authorizing one-way paging to a number of entities, including Williams, who was doing business as Industrial Communications. All but one of the certificates authorized both one-way and two-way paging operations. In the early 1980s, the Federal Communications Commission (FCC) deregulated radio frequencies used in paging operations and made an additional sixty-nine channels available in Utah on a first-come, first-served basis. *See* 47 C.F.R. § 22.501(a)(1) & (4), (d) & (p)(1) (1986). After receiving permission from the FCC to operate a service on one of the new frequencies, American Paging, Inc., contacted the PSC to determine whether a certificate was also required. In a letter dated June 3, 1983, the PSC notified counsel for American Paging that a certificate was not necessary because the PSC was not statutorily authorized to maintain jurisdiction over one-way paging services. *See Williams I,* 720 P.2d at 774 n. 4. Relying on this letter, American Paging commenced operations.

In August of 1983, Page America, Inc., filed an application with the PSC to operate a one-way paging service. The matter was set for public hearing during December 1983. Meanwhile, American Paging continued its operations with tacit PSC approval. Williams protested Page America's application and requested that the PSC issue a cease and desist order to American Paging, preventing it from further business operations. The PSC refused to do so, but did order American Paging to stop soliciting new customers.

After conducting public hearings on Page America's application, the PSC determined that it had no jurisdiction over one-way paging services, effectively deregulating the market. The PSC then cancelled the certificates previously issued to both Williams and Mobile Telephone. Williams

and Mobile Telephone sought to protect their interests through various motions, including one requesting rehearing by the PSC. Upon denial of the rehearing, they filed an appeal with this Court that resulted in *Williams I.* The Court in *Williams I* found that the PSC should have followed the Utah Administrative Rulemaking Act's procedures in determining that it had no jurisdiction over one-way paging. 720 P.2d at 776. Thus, the action was remanded to the PSC for further proceedings consistent with the Court's findings. *Id.* at 778. *Williams I* was issued on March 4, 1986.

*A. American Paging's Application for a Certificate and Motion to Dismiss*

After Williams and Mobile Telephone's petition was filed in *Williams I,* but before this Court's decision was issued, American Paging applied for its own certificate and simultaneously moved for dismissal of its application on grounds that the PSC lacked jurisdiction over one-way paging. American Paging's motion was not directed toward the decision then pending before this Court, but rather sought to clarify the PSC's jurisdictional limits in light of newly enacted Utah Code Ann. § 54–8b–3 (1986), a statute which allowed the PSC to exempt certain sectors of the communications industry from regulation. Throughout the pendency of its application, American Paging continued business operations.

Again seeking to protect his interests, Williams intervened on May 28, 1985, in the PSC proceedings regarding American Paging's application. Over the ensuing months, several other parties intervened, including Mobile Telephone, Mountain States Telephone and Telegraph, and NewVector Retail Service, Inc.[2] Between the motions to intervene and the date *Williams I* was issued, numerous parties filed a variety of procedural motions that delayed the

---

2. NewVector Communications, Inc., and NewVector Retail Service, Inc., operate a cellular telecommunications system in the Salt Lake City/Ogden metropolitan area. These parties intervened in the American Paging application process to be certain that their interests regarding the interpretation and application of Utah Code Ann. §§ 54–8b–1 to –9 (1986), were prop-

erly and forcefully articulated. They also filed an amicus brief with this Court on appeal. Nevertheless, they did not have a direct interest in the outcome of the one-way paging jurisdictional issue. Intervenor Mountain States Telephone and Telegraph has professed a desire to operate one-way paging services in the near future.

PSC's eventual order until after *Williams I* had been issued.

In response to American Paging's application for a certificate and its simultaneous motion for dismissal due to lack of jurisdiction, the PSC issued an order on May 23, 1986, granting American Paging's motion to dismiss. The order asserted the PSC's lack of jurisdiction over one-way paging services and specifically stated that Utah Code Ann. §§ 54–8b–1 to –9 (1986) did not affect PSC jurisdiction.

### B. PSC Rule–Making Proceeding Pursuant to Williams I

■ On March 18, 1986, following the remand of *Williams I*, the PSC issued a notice of rule change in compliance with the Utah Administrative Rulemaking Act. Utah Code Ann. § 63–46a–4 (1986). The PSC granted several extensions of time during which written comments on the proposed rule could be submitted. On May 15, 1986, Williams and Mobile Telephone filed notice of their opposition to the rule and a request for public hearing. Inasmuch as the request for public hearing was over two weeks late, it was not granted. *See* Utah Code Ann. § 63–46a–5 (1986). The PSC thereafter adopted rule 8304, to be effective May 16, 1986. Rule 8304 provides in relevant part, "The Public Service Commission of Utah does not have jurisdiction over one-way paging services." Williams' counsel later claimed that his client had received improper notice of the proposed rule.[3] Consequently, the PSC allowed Williams to file an affidavit with attach-

ments to supplement the record to bolster these claims.

### C. Williams' and Mobile Telephone's Civil Suits for Damages

On March 11, 1986, Williams sent a letter to the PSC demanding that it prevent American Paging from continuing to operate one-way paging services without a certificate. The letter pointed out that *Williams I* had overturned the PSC's previous order, restoring jurisdiction over one-way paging to the PSC. When the PSC refused to act as requested, Williams and Mobile Telephone filed separate civil suits against American Paging for damages under Utah Code Ann. § 54–7–22 (1986).[4] The suits sought compensation for losses attributable to American Paging's allegedly unauthorized operations.

Following denial of American Paging's motions for summary judgment, the trial court chose to grant Williams' and Mobile Telephone's motions for partial summary judgment. American Paging moved the court to reconsider and clarify its order, to stay proceedings, and to extend a previously granted protective order. The court then vacated its prior memorandum decision and granted a declaratory judgment in favor of Williams and Mobile Telephone. The trial court's order and judgment relied on this Court's decision in *Williams I* and found that one-way paging was within the jurisdiction of the PSC. This order is before this Court on appeal pursuant to the lower court's certification under rule 54(b) of the Utah Rules of Civil Procedure. *See*

---

3. Williams also raises this claim on appeal. Although we lack subject matter jurisdiction over the rule-making proceedings, we note that Williams' claims are without merit. First, Utah Code Ann. § 63–46a–4(4) (1986) only requires that notice of rule-making proceedings be mailed to those individuals "who have made timely request of the agency for advance notice...." Williams does not assert, nor does the record suggest, that he requested notice from the PSC prior to the proceedings. Second, absent prejudice, a different *mode* of service is sufficient for administrative proceedings. *Olin Indus. v. NLRB*, 192 F.2d 799 (5th Cir.), *cert. denied*, 343 U.S. 919, 72 S.Ct. 676, 96 L.Ed. 1332, *reh'g denied*, 343 U.S. 970, 72 S.Ct. 1055, 96 L.Ed. 1365 (1952). The record reflects, and Williams' counsel admits, that Commissioner

Cameron of the PSC hand-delivered written notice to Williams' counsel during a collateral proceeding. Given the long history of litigation between these parties on this question, it is inconceivable that Williams was unprepared to make objections to the proposed rule within the statutorily authorized time. Thus the notice provision's purpose was achieved, and Williams' notice was adequate. We do not suggest that notice provisions can be taken lightly and complied with casually. We merely point out that under these facts, where actual notice was received and the statute was complied with, there is no procedural defect.

4. These cases were later consolidated by the trial court upon stipulation of the parties.

*Pate v. Marathon Steel Co.*, 692 P.2d 765, 767 (Utah 1984).

## II. Jurisdiction of the Court

■ Prior to deciding the substantive questions presented by the parties, this Court must ascertain whether it has subject matter jurisdiction over the petitions and the appeal before it. Each action must be considered separately. The petition to review the PSC order dismissing American Paging's application for a certificate is governed by section 54–7–15, which states in pertinent part:

Before any party, stockholder, bondholder, or other person pecuniarily interested in the public utility who is dissatisfied with an order or decision of the commission may commence legal action, the aggrieved party or person shall first proceed as provided in this section.

(1) After any order or decision has been made by the commission any party to the action or proceeding ... may apply for review or rehearing in respect to any matters determined in said action or proceeding specified in the application.... No applicant shall in any court urge or rely on any ground not set forth in the application.

Utah Code Ann. § 54–7–15 (1986).[5] This Court examined section 54–7–15 and its effects upon the Court's jurisdiction in *Utah Department of Business Regulations v. Public Service Commission*, 602 P.2d 696 (Utah 1979). There, the petitioner failed to follow the process outlined in section 54–7–15 and instead filed a petition with this Court. We found that section 54–7–15 constitutes a "jurisdictional prerequisite" to any judicial review and that "[w]here the outlined procedures [in section 54–7–15] have not been complied with, this Court is without jurisdiction over the subject matter of the dispute." *Id.* at 699.

In the instant case, neither American Paging nor any of the intervening parties filed an application for rehearing with the PSC prior to seeking a writ of certiorari. Thus, even though they are interested parties, their failure to apply for rehearing within twenty days of the Commission's issuance of its order divests this Court of subject matter jurisdiction. Utah Code Ann. § 54–7–15(1) (1986). Additionally, section 54–7–15 states that petitioning parties can only bring those grounds before this Court that were argued in the application for rehearing. *Id.* In the absence of an application for rehearing, the parties are left without anything to appeal. Therefore, this Court has no subject matter jurisdiction over the petition and will not review the PSC's dismissal of American Paging's application for a certificate.

We are also presented with a petition for review of the rule-making proceeding which resulted in the PSC's adoption of rule 8304, proclaiming the PSC's lack of jurisdiction over one-way paging services. The procedure governing a party's appeal of a rule is arguably governed by both Utah Code Ann. § 54–7–15 and the Administrative Rulemaking Act, found in Utah Code Ann. §§ 63–46a–1 to –15 (1986). Under the rule-making provisions, section 63–46a–13 allows:

(1) The validity or applicability of a rule may be determined in an action for declaratory judgment in any district court of this state with appropriate venue, if it is alleged that the rule, or its potential application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff.

Utah Code Ann. § 63–46a–13 (1986). The language of this statute suggests that the validity or applicability of any rule should be determined through declaratory judgment in the appropriate district court. The Utah statute is apparently based on section 7 of the Uniform State Administrative Procedure Act (1961), which is substantially

---

**5.** The legislature recently amended this section's introductory language to make the requirements more straight-forward. As of January 1, 1988, section 54–7–15 states: "Before seeking judicial review of the commission's actions, any party ... who is dissatisfied with an order of the commission shall meet the requirements of this section."

similar in its language.[6]

This statute is ambiguous. If the phrase "may be determined in an action for declaratory judgment in any district court" restricts a plaintiff's remedy to a declaratory judgment action in a district court, then the action appealing rule 8304 is improperly before this Court because petitioners did not pursue a declaratory judgment. Conversely, if the language in section 63-46a-13 is permissive, allowing an action for declaratory judgment but not excluding other avenues of appeal, then this action may be within our jurisdiction.

For guidance, we look to other states that have statutes containing language similar to section 7 of the Uniform State Administrative Procedure Act. Texas, for example, has several statutes based on the language in section 7. *See, e.g.,* Tex.Rev. Civ.Stat.Ann. art. 165-3, § 2C (Vernon Supp.1988); art. 6252-13a, § 12 (Vernon Supp.1988); art. 9201, § 9 (Vernon Supp. 1988). Article 6252-13a, section 12 of the Texas Civil Statutes specifies that the validity of a rule or regulation "may be determined in an action for declaratory judgment in a district court of Travis County, and not elsewhere," suggesting that "may" is permissive as to the type of action but not the venue. This interpretation is in accord with the view of several courts that have considered the issue. *See, e.g., Sim v. Washington State Parks & Recreation Comm'n,* 90 Wash.2d 378, 583 P.2d 1193 (1978); *Broen Memorial Home v. Minnesota Dep't of Human Serv.,* 364 N.W.2d 436, 440 (Minn.Ct.App.1985).

The Utah statute allows a declaratory action to be brought in *any* appropriate district court to determine the validity of a rule promulgated by a state agency. Unlike the model act and other states' statutes, it does not restrict venue. If "may" is permissive as to the type of action and the statute does not limit venue as intended by the model act, then a plaintiff could bring any type of suit in any court under

Utah law. This construction would render the statutory language in section 63-46a-13 a mere descriptive truism, a result the legislature probably did not intend. However, a construction of section 63-46a-13 that limits the method of review of rule making to a declaratory judgment action would contradict the statute's plain language. To so find would require this Court to ignore a basic tenet of statutory construction, *Grant v. Utah State Land Board,* 26 Utah 2d 100, 102-03, 485 P.2d 1035, 1036-37 (1971) (statutory language should be accorded its plain meaning), and assert that "may" is equivalent to "shall."

Section 63-46a-13 presents an additional problem. Unlike section 54-7-15, it does not require a party to file a request for rehearing with the PSC (or any other administrative agency) prior to seeking judicial relief. Instead, it allows a party to challenge a rule by seeking a declaratory judgment and, ultimately, to reach this Court by appealing a lower court's unfavorable decision. As discussed above, a party seeking review of a PSC order or decision (in contrast to a rule, *see* Utah Code Ann. § 63-46a-2(13)(c) (Supp.1987)) must file a petition for rehearing with the PSC prior to seeking judicial review of any type. Utah Code Ann. § 54-7-15 (1986). There seems to be no valid substantive distinction between rules and orders or decisions upon which to base this differential treatment.

The Public Utilities title alone, however, does not allow two different procedures for reviewing PSC determinations. Utah Code Ann. § 54-7-1 begins by proclaiming, "All hearings, investigations and proceedings [of the PSC] shall be governed by this chapter." Chapter 7 of title 54 includes section 15, which requires a party to apply for rehearing prior to seeking judicial review. It does not provide for any other procedure by which a party can obtain judicial review. Thus title 54, governing public

---

**6.** Section 7 of the Uniform State Administrative Procedure Act (1961) reads in part:

The validity or applicability of a rule may be determined in an action for declaratory judgment in the [District Court of _____

County], if it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff.

**48**

utilities, and section 63–46a–13, governing administrative rule making generally, contemplate different procedures for review.

■ In resolving the conflict between the two statutes, we are guided by the principle that when two statutory provisions conflict, the more specific provision will prevail over the more general provision. *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 216 (Utah 1984); *Millett v. Clark Clinic Corp.*, 609 P.2d 934, 936 (Utah 1980). Under this general guideline, we hold that apart from any additional procedures which may be authorized or allowed under section 63–46a–13,[7] section 54–7–15 contains the specific and minimum requirements which any party to a PSC proceeding, hearing, or investigation must follow prior to obtaining judicial review.

Sections 54–7–1 to –30 of the Public Utilities Act specifically provide for hearings, proceedings, and methods by which the PSC is to regulate and oversee public utilities. Title 54 does not govern any other administrative agency or serve any purpose beyond that related to the regulation and oversight of public utilities. Section 63–46a–13, as part of the Administrative Rulemaking Act, however, is much more general in its application. It governs all administrative agencies operating in the state of Utah and is used in any type of rule-making session. Although it includes the PSC's rule-making proceedings, section 63–46a–13 is far more general in nature and is therefore superseded by the specific provisions contained in title 54.

Section 54–7–1 has, since 1983, included a reference to the Administrative Rulemaking Act. It states:

The commission shall adopt rules pursuant to the Utah Administrative Rulemaking Act to govern the regulation of public utilities. These rules shall include: (a) provisions for the discovery of information, including the confidentiality of information submitted to the commission and sanctions for failure to make discovery; and (b) provisions governing the practices and procedures in hearings, investigations, and proceedings of the commission.

Utah Code Ann. § 54–7–1 (1986). This reference only requires that the PSC adopt rules governing its own procedures according to the Administrative Rulemaking Act. By the plain language of section 54–7–1, the Rulemaking Act must be used for adopting, not reviewing, rules necessary for the PSC to insure expeditious and informal resolution of matters that come before it.[8] This language does not mandate use of the Administrative Rulemaking Act for purposes of reviewing rules, nor does it detract from our conclusion that a party to any proceeding before the PSC must follow the provisions of section 54–7–15 before seeking judicial review.

■ We note that public policy supports this assessment. Requiring parties to PSC proceedings to file a petition for rehearing prior to seeking judicial review provides the PSC an opportunity to correct any manifest errors in its own decisions. The PSC's expertise and experience in public utility regulation place it in the best position to review and expeditiously resolve any problems with its own decisions, orders, or rules. This process also conserves judicial resources by allowing some parties to obtain a resolution of their conflicts without involving the expense and time of formal appellate review. Finally, the procedure outlined in title 54 allows a party that has exhausted its administrative remedies to directly petition this Court for a writ of certiorari. This eliminates the intermediary step and the resulting time and expense of seeking a declaratory judgment from the district court as specified under the Administrative Rulemaking Act in section 63–46a–13. Thus, the parties' failure to request rehearing before the PSC leaves

---

7. At this time, we withhold judgment as to the definitive interpretation of section 63–46a–13.

8. In *Williams I,* we did not apply Utah Code Ann. § 54–7–1.5, which governs communication between the PSC and parties before it, to the PSC's acts because they should have been governed by the Administrative Rulemaking Act. *Williams I,* 720 P.2d at 776 n. 8. The PSC's acts in question in *Williams I* involved adopting a new rule. Thus, our decision today is consistent with our determination in *Williams I.*

this Court without subject matter jurisdiction over the petition to review the PSC's adoption of rule 8304. *Utah Dep't of Business Regulations v. Public Serv. Comm'n,* 602 P.2d 696, 699 (Utah 1979).

The third action presently before the Court consists of an appeal from a final judgment of the Third District Court, as certified under Utah Rule of Civil Procedure 54(b). In that action, the trial court entered a declaratory judgment stating that pursuant to this Court's decision in *Williams I,* the PSC has jurisdiction to regulate one-way paging services. Certification under rule 54(b) is allowed where the trial court's order is final only as to fewer than all the parties or claims in a multi-party or multi-claim suit. *Pate v. Marathon Steel Co.,* 692 P.2d 765, 767 (Utah 1984). Thus, the declaratory judgment is properly before this Court on appeal.

### III. PSC's Jurisdiction Over One–Way Paging Operations

#### A. Review of Jurisdiction

Williams' and Mobile Telephone's suits against American Paging were brought under Utah Code Ann. § 54–7–22 (1986), which allows an action for damages to be brought against a public utility. If American Paging is a public utility, Williams' and Mobile Telephone's suits may proceed. If American Paging is not a public utility, then the suit has no merit and is not authorized by section 54–7–22. Thus, the question of the PSC's jurisdiction over one-way paging operations, and thereby the status of companies such as American Paging that offer one-way paging, is central to Williams' and Mobile Telephone's suits.

Section 54–2–1 offers definitions of terms and specifies those utilities that are subject to jurisdiction and regulation by the PSC. Subsections (30) and (31) state:

> (30) "Telephone corporation" includes every corporation and person, their les-

sees, trustees, and receivers, owning, controlling, operating, or managing any telephone line for public service within this state. . . . It does not include any person which provides, on a resale basis, any telephone or telecommunication service which is purchased from a telephone corporation.

> (31) "Telephone line" includes all conduits, ducts, poles, wires, cables, instruments, and appliances, and all the real estate, fixtures, and personal property owned, controlled, operated, or managed in connection with or to facilitate communication by telephone whether that communication is had with or without the use of transmission wires.

Utah Code Ann. § 54–2–1(30) & (31) (1986).

In formulating rule 8304, the PSC determined that subsections (30) and (31) of section 54–2–1 did not authorize it to regulate and oversee one-way paging operations in the state of Utah. The same statutory language is dispositive of the merits of all issues in this consolidated proceeding.

■ Williams asserts four primary arguments against the PSC's determination that it has no jurisdiction over one-way paging. First, Williams asserts that the PSC has improperly and arbitrarily reversed its long-standing policy of regulation of one-way paging services. Second, Williams claims that the legislature's enactment of section 54–8b–3, allowing exemptions from regulation in the telecommunications industry, manifests a legislative intent to extend to the PSC jurisdiction over one-way paging services. Third, Williams argues that the PSC should be equitably estopped from changing its regulatory stance and, finally, that the effective revocation of Williams' certificate by the PSC ruling is equivalent to an unconstitutional, uncompensated taking for a public purpose.[9] Each argument will be considered in turn.

---

9. Williams' third and fourth contentions were raised in the two administrative cases but not in the action for damages. Although we have no subject matter jurisdiction over the administrative actions, we deal with the contentions raised therein for several reasons. First, this approach allows for the most expeditious solution to the dispute between these parties. All questions were thoroughly briefed and are fully presented to the Court. Cf. *State v. Gibbons,* 740 P.2d 1309, 1311 n. 2, 1312–14 (Utah 1987) (court retains jurisdiction while remanding for determination of motion to withdraw guilty plea and offers guidelines to court below on motion).

**50**

When reviewing the PSC's interpretation of general questions of law, this Court applies a correction-of-error standard, granting no deference to PSC decisions. *Utah Dep't of Admin. Serv. v. Public Serv. Comm'n*, 658 P.2d 601, 608 (Utah 1983). This Court will afford great deference to PSC findings on matters of basic fact, upholding those findings based on any evidence of substance. *Id.* at 608–09. For matters of ultimate fact, mixed findings of fact and law, and the PSC's interpretation of the operative provisions of the statutory law it is empowered to administer, PSC findings must be rationally based and are set aside only if they are imposed arbitrarily or capriciously or are beyond the tolerable limits of reason. *Id.* at 609–12. The statutes governing the jurisdiction of the PSC fall within this third, intermediate category. Thus, we will grant deference to the PSC's determination of its own jurisdiction if that determination is within the tolerable limits of reason. This view is in accord with this Court's statutory authorization to review PSC decisions. Utah Code Ann. § 54–7–16 (1986); *see also Pan American World Airways, Inc. v. C.A.B.*, 392 F.2d 483, 496 (D.C.Cir.1968) (deference granted to administrative board's determination of its own jurisdiction).

In determining whether the PSC acted reasonably in limiting its jurisdiction to exclude regulation of one-way paging, this Court is guided by the principle that where a " 'specific power is conferred by statute upon a tribunal, board, or commission with limited powers, the powers are limited to such as are specifically mentioned.' " *Union Pac. R.R. Co. v. Public Serv. Comm'n*, 103 Utah 186, 197, 134 P.2d 469, 474 (1943) (quoting *Bamberger Elec. R.R. Co. v. Public Utilities Comm'n*, 59 Utah 351, 364, 204 P. 314, 320 (1922)). All powers retained by the PSC are derived from and created by statute. The PSC has no inherent regulatory powers and can only assert those which are expressly granted or clearly implied as necessary to the discharge of the duties and responsibilities imposed upon it. *Basin Flying Serv. v. Public Serv. Comm'n*, 531 P.2d 1303, 1305 (Utah 1975). To ensure that the administrative powers of the PSC are not overextended, "any reasonable doubt of the existence of any power must be resolved against the exercise thereof." *Public Serv. Comm'n v. Formal Complaint of WWZ Co.*, 641 P.2d 183, 186 (Wyo.1982).

After the remand of *Williams I*, the PSC followed rule-making procedures outlined in the Administrative Rulemaking Act and promulgated rule 8304, which proclaims the PSC's lack of jurisdiction over one-way paging services.[10] In support of its decision, the PSC points out that it had never considered or specifically found that it could validly exercise jurisdiction over one-way paging but, instead, had passed judgment on one-way paging applications when presented in connection with two-way radio communications.[11]

In deciding that one-way paging is not within its jurisdiction, the PSC pointed to section 54–2–1(31), which defines "telephone line" as including all "conduits, ducts, poles, wires, cables, instruments, and appliances and all other real estate, fixtures and personal property owned, controlled, operated, or managed in connection

---

Second, these points are relevant to the civil case, and our disposition of them will enable the trial court to enter a final judgment promptly. Finally, this approach is not without precedent. A court may reach a result on the merits if it is equivalent to the result the court would have reached in finding that it lacked jurisdiction. In so doing, the court may ignore jurisdictional issues and rule on the merits alone. *Pan American World Airways, Inc. v. C.A.B.*, 392 F.2d 483, 486 n. 4 (D.C.Cir.1968). Although we explicitly hold that we have no jurisdiction over the administrative actions, in our discussion of the merits, we arrive at the same result. Thus, we discuss all of Williams' primary contentions.

**10.** Although the rule itself is not being reviewed by this Court because of lack of jurisdiction, the PSC's analysis and reasoning concerning their jurisdiction is relevant to a review of the trial court's decision in favor of PSC jurisdiction over one-way paging.

**11.** Of the five certificates issued by the PSC to entities seeking to provide one-way paging services to the public, only one did not include two-way radio paging or some other service when evaluated by the PSC.

with or to facilitate communication by telephone whether that communication is had with or without the use of transmission wires." One-way paging does not involve the interactive communication contemplated by the statute. The PSC noted that if the authorizing statute is construed broadly enough to include one-way paging, then "conceivably the Commission should then regulate all suppliers of telephone equipment, e.g. Radio Shack, Sears, J.C. Penney, Panasonic; suppliers of wiring components; all suppliers of telephone directories, including the many not affiliated with the Bell System; telephone answering services, telephone answering devices and all such suppliers; radio talk stations; newspaper classified advertising, *ad absurdum.*" *In re Page America of Utah, Inc.,* Order on motion for exempt certificate, PSCU case No. 83–082–01, at 11. The PSC continued:

> The focus instead should be on the connotation of telephone service which implies interactive, and at least potentially extended two-way communication. That was certainly the focus in 1917 when the statute was enacted, since most of the services now technologically feasible were not foreseen at that time. Paging service is conceptually no different from answering services (which have never been considered appropriate objects of state regulation); it is the same service offered through a different medium. Telephone service over land lines or radio waves is fundamentally the same service irrespective of the means of transmission. But telephone service is a two-way service; paging service is one-way call notification.

*Id.*

■ Williams and Mobile Telephone dispute the PSC's interpretation of section 54–2–1. They claim that the statute contemplates one-way paging services and provides for the commission's jurisdiction over the services. However, we believe that the PSC's decision construing its authority to exclude one-way paging services is rational and reasonably based and represents a strict construction of the statutes authoriz-

ing jurisdiction. Hence, we agree with the PSC's finding.

■ Williams and Mobile Telephone incorrectly rely on *Husky Oil Co. v. State Tax Commission,* 556 P.2d 1268 (Utah 1976), for the proposition that the PSC cannot unilaterally and arbitrarily reverse a long-standing course of regulation. In *Husky,* the plaintiff sued the state tax commission when it reversed a 34–year–old regulation granting exemptions to use taxes for sales of property not used in the seller's regular course of business. In reversing the tax commission's actions, this Court noted that "prior determinations [of administrative agencies] are entitled to great weight.... [R]adical departures from administrative interpretations consistently followed cannot be made except for most cogent reasons." *Id.* at 1271 (quoting 73 C.J.S. *Public Administrative Bodies and Procedure,* § 148). Williams and Mobile Telephone argue that the PSC should similarly be prohibited from reversing its practice of regulation. We do not think *Husky* is controlling.

First, as noted above, the PSC has never actually "determined" its jurisdiction over one-way paging services in any formal way. Instead, one-way paging services were brought before the commission in conjunction with other services and were not separately considered. In *Husky,* the tax commission, after deliberation, had formally adopted the regulation in question.

Second, the issue of one-way paging has never been adjudicated by this Court. In *Husky,* this Court noted that it had approved of "the statutory exemption relative to isolated sales not made in the regular course of business" on two separate occasions. *Id.* at 1270. Williams asserts that this Court's decision in *Williams v. Hyrum Gibbons & Sons Co.,* 602 P.2d 684 (Utah 1979), concluded that Williams' operations, including radio telephone communications and paging systems, were a public utility and that paging and radio telephone communications were within section 54–2–1's definition of "public utility." However, this Court did not reach the question of PSC jurisdiction over one-way paging in

*Gibbons,* but only determined that Williams, as an authorized public utility, could condemn property for the public good. In fact, the Court in *Gibbons* seemed to contemplate interactive, two-way communications. It noted that the term "telephone line" is defined to include radio *telephone* communications. *Gibbons,* 602 P.2d at 686–87. Nothing in the *Gibbons* opinion suggests that the Court determined or even considered whether one-way paging alone is properly within the jurisdiction of the PSC.

Similarly, in *Medic–Call, Inc. v. Public Service Commission,* 24 Utah 2d 273, 470 P.2d 258 (1970), this Court considered whether a one-way paging service operated exclusively for physicians was a public utility. We specifically withheld judgment concerning the service's qualification as a telephone corporation under the Public Utilities Act. *Id.* at 274, 470 P.2d at 259. Hence, unlike the Court in *Husky,* this Court has never considered the validity of the PSC decision now before it.

Finally, we note that the PSC followed the rule-making procedures outlined in the Utah Code and that the validity of these procedures has not been challenged.

▄▄▄ Although the PSC may not arbitrarily or capriciously reverse a prior decision, administrative agencies, as a general matter, are free of the limitations of *stare decisis* as they apply in a judicial setting. Davis, *Administrative Law* §§ 20.9, 20.11 (2d ed. 1983); 2 Am.Jur.2d *Administrative Law* § 478 (1962). Additionally, Williams' position would require the PSC to be bound in future circumstances by past mistakes. As this Court has previously recognized, this analysis is unacceptable. *Colman v. Utah State Land Bd.,* 17 Utah 2d 14, 19–20, 403 P.2d 781, 784 (1965). Thus, the PSC acted rationally and reasonably in formulating rule 8304 and is not prevented from reversing its previous practice of exercising jurisdiction over one-way paging services.

## B. Utah Code Ann. § 54–8b–2

▄▄▄ Williams' next primary argument is that the propriety of the PSC's jurisdiction over one-way paging operations was evidenced and reinforced by the legislative enactment of the Public Telecommunications Utility Law in chapter 8b of title 54 of the Utah Code. Chapter 8b authorizes the PSC to deregulate individual sectors of the public telecommunications industry that meet certain statutory requirements. Section 54–8b–2 defines "public telecommunications services" as "the transmission of signs, signals, writing, images, sounds, messages, data, or other information of any nature by wire, radio, lightwaves, or other electromagnetic means offered to the public generally." Section 54–8b–3 vests the PSC with "power and jurisdiction to partially or wholly exempt from any requirement of this title any telecommunications corporation or public telecommunications service in this state." Williams argues that these two sections evidence the legislature's view that one-way paging services are included within the PSC's jurisdiction.

Williams claims that the definition of "public telecommunications" services in section 54–8b–2 includes one-way paging. Thus, in allowing the PSC to exempt such services from regulation in section 54–8b–3, the legislature demonstrated its belief that the PSC properly maintained jurisdiction over paging services prior to the statute's enactment. We disagree.

Although it is not implausible to construe section 54–8b–2 broadly enough to include one-way paging, it is unreasonable to assert that chapter 8b of the Public Telecommunications Utility Law affects the PSC's jurisdiction. Section 54–8b–9 states: "Nothing in this chapter shall be construed to *enlarge or reduce* the commission's jurisdiction over the services and entities for which jurisdiction is provided or excluded by other provisions of this title." (Emphasis added.) Thus, by the terms of chapter 8b itself, the PSC must determine whether it is authorized to exercise jurisdiction over a telecommunications service prior to deciding whether it is allowed to exempt that service from regulation under the provisions of chapter 8b. Chapter 8b does not independently authorize the PSC to regu-

late telecommunications services, but merely authorizes it, under narrow circumstances, to exempt telecommunications services from otherwise authorized and legitimate regulation.

## C. Equitable Estoppel

■ Williams asserts that, aside from statutory arguments, the PSC is equitably estopped from refusing to maintain jurisdiction over one-way paging services. Williams claims that because of the PSC's prior authorization of a certificate on his behalf, he made capital expenditures and installed transmitting equipment in locations where he would not have otherwise done so. Because of this reliance, he claims, the PSC should now be equitably estopped from effectively invalidating his certificate. In so doing, Williams relies on *Celebrity Club, Inc. v. Utah Liquor Control Commission*, 602 P.2d 689 (Utah 1979). In *Celebrity Club*, prior to constructing a building which would eventually house a private club, the plaintiff contacted Liquor Control Commission compliance agents in connection with a future application for a liquor license. The commission told the plaintiff that the planned site of a liquor store included in his club did not violate a statute prohibiting the issuance of liquor licenses to clubs located within a 600–foot radius of any public or private school. In reliance upon this communication, the plaintiff began construction on his club and eventually expended more than $200,000 to achieve its completion. The commission subsequently determined that the plaintiff's premises were in fact in violation of the statute requiring them to be more than 600 feet away from a private or public school and denied the plaintiff's application for a liquor license. *Id.* at 690–91. This Court held that the commission was estopped from denying the plaintiff's license because of his reliance on their prior communications. In so holding, we set forth three elements of equitable estoppel:

(1) an admission, statement, or act inconsistent with the claim afterwards asserted,

(2) action by the other party on the faith of such admission, statement, or act, and

(3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

*Id.* at 694.

*Celebrity Club* is distinguishable on its facts. In *Celebrity Club*, the plaintiff relied directly on a commission statement in expending a large sum of money to prepare for business operations. Additionally, the liquor commission's attempt to deny the plaintiff's application for a license in *Celebrity Club* would have resulted in the plaintiff's complete inability to see a return on his expenditures; his ability to operate a venture that dispensed liquor would have been completely destroyed. In this case, however, Williams is not foreclosed from operating his business and obtaining a return on his investments. Although he will no longer be permitted to operate his business in a protected market, he will be able to continue all current operations. In fact, he will be spared some expense related to regulation and is in an advantageous position relative to newcomers now wishing to enter the unregulated market. Thus, we hold that any injury to Williams is not of the magnitude which required the application of estoppel in *Celebrity Club*. Williams is still in business and is still authorized to do everything his certificate formerly permitted him to do.

## D. Taking of Private Property

■ Finally, Williams argues that the PSC's action in refusing jurisdiction over one-way paging services effectively denies him a valuable property right without just compensation. Williams asserts that the certificate he holds that authorizes him to perform one-way paging operations in a protected market place is a property right which can only be taken from him with just compensation pursuant to the fifth and fourteenth amendments to the United States Constitution.[12] Based on the follow-

---

12. Although Williams refers to the Utah Constitution in his brief, he does not separately treat or brief the taking issue under the Utah Constitution. *See* Utah Const. art. I, §§ 7, 22. We

ing analysis, we hold that this is not an example of an unjustified taking and that Williams' rights to due process were not violated.

In *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631, *reh'g denied,* 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198 (1978), the United States Supreme Court noted that it had not developed a " 'set formula' for determining when 'justice and fairness' require[d] that economic injuries caused by public action be compensated by the government." *Id.* at 124, 98 S.Ct. at 2659. Instead, the Court therein adopted a case-by-case approach. The Court did point out that a taking is more likely to have occurred when the "interference with property can be characterized as a physical invasion by government," than when it is simply the result of an economic adjustment for public good. *Id.* In addition, the United States Supreme Court noted that government must be allowed to change policies periodically without being forced to pay for any conceivable effect different regulations or laws may have on private economic interests.

> "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law," *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 67 L.Ed. 322, 43 S.Ct. 158, [159], 28 ALR 1321 (1922), and this Court has accordingly recognized, in a wide variety of contexts, that government may execute laws or programs that adversely affect recognized economic values. Exercises of the taxing power are one obvious example.

*Id.*

Under these principles, Williams' claim is without merit. First, there has been no physical intrusion. In addition, Williams' interest in the certificate does not rise to a level of expectation constituting "property" under the United States Constitution. *See id.* at 125, 98 S.Ct. at 2659. The certificate did not guarantee Williams the right to operate perpetually in a protected market. The PSC could have issued additional certificates to alternate carriers covering the same geographical region at any time. Williams' legitimate expectation was only that he had permission from the PSC to operate, not that he was guaranteed a protected market. Finally, this case represents a position change by a government agency that cannot result in a compensable taking. After careful consideration, the PSC has altered a policy long accepted but little analyzed. Williams' economic interest in his property other than his certificate has not been greatly affected, and there is no justification for his claim seeking compensation.

We agree with the Nevada Supreme Court, which found in *Las Vegas Valley Water District v. Michelas,* 77 Nev. 171, 360 P.2d 1041 (1961), that the holder of a nonexclusive certificate of public convenience and necessity may not recover damages for its loss or prevent competition by injunction. In *Michelas,* the Nevada court considered whether a municipal water district's decision to supply water to an area for which a private water company had been issued a certificate of public convenience and necessity as a public water supplier constituted a compensable taking under the state and federal constitutions. The court determined that it did not, relying on statutory language and the nonexclusive nature of the certificate granted to the water supplier. Although different results have been reached, *see Flecha Caida Water Co. v. City of Tucson,* 4 Ariz.App. 331, 334, 420 P.2d 198, 201 (1966) (exclusive certificate was compensable "property"), the better considered position seems to be that a nonexclusive certificate cannot be the basis for a compensable .taking. *Accord Greater Wilmington Transp. Auth. v. Kline,* 285 A.2d 819, 823 (Del.Super. 1971). We therefore hold that there is no violation of the federal constitution on these grounds.

### IV. Conclusion

We find that the PSC had a proper and rational basis for determining that it could

therefore make no judgment concerning the possibility of a different standard for takings

under the Utah Constitution, but reserve the possibility of doing so for a later case.

not exercise jurisdiction over one-way paging services. This decision was not affected by the legislature's adoption of chapter 8b of title 54, the Public Telecommunications Utility Law. Additionally, Williams' claims for equitable estoppel and an unconstitutional taking of private property are without merit.

As noted, we have no jurisdiction over either the petition for review of PSC rule 8304 or the petition for review of the PSC's denial of American Paging's application for a certificate. We do have subject matter jurisdiction over the civil action for damages in the Third District Court. Pursuant to the preceding discussion, we reverse the court's declaratory judgment in favor of Williams and Mobile Telephone and remand this case, ordering that judgment be entered dismissing Williams' and Mobile Telephone's suits for damages.

HALL, C.J., and HOWE and ZIMMERMAN, JJ., concur.

STEWART, Associate C.J., concurs in the result.